312    NEW YORK PRACTICE REPORTS.

Crosby agt. The New York Mutual Ins. Co.

## NEW YORK SUPERIOR COURT.

SETH CROSBY, FERDINAND A. CROCKER, and GEORGE LOVELL, respondents, agt. THE NEW YORK MUTUAL INSURANCE COMPANY, appellants.

CHARLES C. DUNCAN and others, respondents, agt. THE GREAT WESTERN INSURANCE COMPANY, appellants.

Where a vessel under a marine policy of insurance receives a fatal injury while owned by the insured, he will be entitled to recover to the extent of the injury, though he sells her subsequently, and before the destruction is visibly complete.

Where it appears that neither the assured, nor the underwriters, could exercise any control over the vessel; and that in the course of the voyage the vessel had been placed in such a position that it was totally out of the power of the assured or the underwriters to procure its arrival, the voyage being arrested, and the vessel receiving a damage which, considering its nature, rendered it certain that it could not reach its original destination, the *loss is absolute, and of itself total,* independently of the election of the assured to treat as such.

It is only in case of a constructive, not of an absolute total loss, that an *abandonment* is necessary.

*General Term, December,* 1859.

BOSWORTH, WOODRUFF *and* MONCRIEF, *Justices.*

THIS action was tried before Mr. Justice PIERREPONT and a jury, verdict being rendered in favor of the plaintiffs, and judgment thereon being entered, the defendants appealed to the general term.

The action is for a total loss on a marine policy of insurance for $10,000 upon the ship Adriana, dated the 21st day of March, 1856, to take effect from the date thereof, and to continue till the voyage was ended, and the vessel moored in safety for twenty-four hours. The ship became a total loss during the voyage.

The interest of the plaintiffs in the policy (to whom it was made payable,) is limited to the sum of $4,161.50 with interest from March 19, 1856, that being the amount due to them from the owners of a bill of stores and chandlery furnished the ship for the voyage on which she was lost.

They claim otherwise as trustees of the owners, among whom as they allege are William D. Crocker, David Crocker and Theodore Ripley.

The defendants stated at the trial, when the case was opened on behalf of the plaintiffs, " that they now admitted their liability for three-fourths of the loss and only defended as to the one-fourth, and that they defended as to this one-fourth solely on the ground of the change of interest as to this one-fourth after the inception of the policy and before the loss."

By bills of sale bearing date respectively on the 17th, 18th, and 21st days of April, 1856, all of which were executed by delivery on the 24th day of the same month, Wm. D. Crocker, David Crocker and Theodore Ripley, the owners of the said one-fourth part of the vessel insured, conveyed that portion to Kendall and Richardson and received pay for the same.

By stipulation between the parties, three-fourths of the amount of the verdict (for the whole claim) was paid, and the question before the court affects only the remaining, so sold, one-fourth.

On the 13th day of April, 1856, the vessel sailed from New York for California, and was sunk at sea on the 5th or 6th day of May following.

WM. M. EVARTS and R. S. EMMET, *for appellants.*
DEXTER A. HAWKINS, *for respondents.*

By the court—MONCRIEF, Justice. The words in the policy " for whom it may concern" must be applied to the interest of the parties, and only the parties for whom it was intended by the person who effects or orders the insurance. (7 *Har. and John. Rep.*, 417 ; 4 *Wend. R.*, 75 ; 8 *Wend. R.*, 144 ; 24 *Wend. R.*, 276 ; 2 *Caine's R.*, 203.)

Those terms are always controlled by proof of the par-

ties for whose benefit the insurance was in fact intended. (*Sharp* agt. *Whipple*, 1 *Bosworth's R.*, 567.)

Proof was given, showing that William D. Crocker, David Crocker and Theodore Ripley, were the owners of the one-fourth interest in said vessel up to the 24th day of April, 1856, on which day bills of sale therefor (of pre. vious dates) were delivered to Kendell and Richardson, the purchasers.

On opening of the case on behalf of the plaintiffs, the defendants stated that they defended as to this one-fourth solely on the ground of change of interest as to this one. fourth after the inception of the policy, and before loss.

The jury, upon the evidence of the case, found as a matter of fact that the vessel, " before the 24th day of April, received the fatal injury which caused her subsequent loss, by sinking, on the 5th or 6th day of May following."

The vessel having received a death wound before she was sold, then it is true by the perils insured against, she was damaged while owned by the insured, and they should recover to the extent of that damage, though they sell her subsequently, and before the destruction is visibly complete.

The question then arises, what, on such a state of facts, was the extent of the damage or the loss ? Wherever it appears that neither the assured, nor the underwriters, could exercise any control over the vessel; and that in the course of the voyage the vessel had been placed in such a position that it was totally out of the power' of the assured or the underwriters to procure its arrival, the voyage being arrested, and the vessel receiving a damage which, considering its nature, rendered it certain that it could not reach its original destination, the loss is absolute and of itself total, independently of the election of the assured to treat it as such.

The loss is, in its nature, total to him who has no means

of recovering his property, whether his inability arises from its annihilation, or from any other insuperable obstacle. It is only in case of a constructive, not of an absolute total loss that an abandonment is necessary. (1 *Curtis R.*, 152; 9 *Barn. & Cres. R.*, 411; 2 *Maule & Selw. R.*, 240; *Burk. R.*, 169; 3 *Bing. N. C. R.*, 266; 14 *Conn. R.*, 50.)

If the damage was such that the vessel could not get into port, but sunk at sea, the loss was practically total, and in substance and good sense amounted to the sum insured, and the defendants are bound by the very terms of their contracts to pay the whole sum insured. (3 *Johns. Cases*, 16; 3 *Bing. N. C. R.*, 286; 6 *Mass. R.*, 465; 7 *Ohio R.*, 283.)

No cases say that the bare existence of the hulk, " the mere congeries of plank and iron " of the ship prevent the loss from being total.

The exceptions, therefore, not being well taken, the judgment will be affirmed in conformity to the stipulations between the parties.

Judgment, therefore, will be entered for the plaintiffs in conformity to the stipulation between the parties.