By the Court,
Robertson, J.
All the original owners of • the ship in question, (the Knickerbocker,) except two, (the Aitkens,) originally authorized and instructed the defendant Stanton and his former partner, James Thomson, Jr. then constituting the firm of Stanton & Thomson, to keep their separate interests in her insured, valuing her at a certain sum, ($50,000.) Each owner gave .this direction separately, without any reference to the interests of others. This fully appears in the testimony and findings by the court. By the death of. Thomson, in March, 1857, and the admission of another, (John) Thomson in his place, a change was made in the com- ' position of the firm, but its business and name continued the same. The policy in suit, and others, were taken out in the same name. In that name accounts were rendered, policies transferred, and the business of the vessel conducted by the new firm as ship’s husbands. There was, therefore, enough evidence of the ratification of their acts, as agents of the *89 owners, to warrant the conclusion of the continuance of the authority to such new firm to continue to make insurance on the several interests of the owners. Although it may not he very essential to the rights of parties to determine who was the actual agent, Stanton or the new firm, it relieves the case from embarrassment to consider the insurance agents as the same from the birth to the loss of the vessel.
In May, 1857, Stanton & Thomson, in pursuance of such authority and instructions, obtained from the defendants, the Atlantic Mutual Insurance Company, the policy in question. By it they are insured by their firm name, “ on account of whom it may concern.” Loss if any payable to them. It contains- the usual clause, limiting the liability of the underwriters in case of a prior insurance “ on the premises,” to so much as such prior insurance should fail to cover. The amount insured is exactly three sixteenths of the valuation of the vessel in the instructions to insure, ($9375,) which was the share of the vessel then owned by the plaintiffs and Fowler. No disclosure was made to the company, at the time of making such insurance, of either the parties or the interest to be insured. Only two other policies, each for one tenth of the valuation of the vessel, had then been taken out by Stanton & Thomson, pursuant to the instructions to them. Thus nothing on the face of the contract, or passing between the parties to it at the time of making it, disclosed for whose account they were in fact made. Unless there was some extrinsic evidence of the intention of Stanton & Thomson in making such insurance as to the persons and interests to be covered thereby, it would have covered only the interest of. Stanton himself as an owner. Or if the only evidence were proof of the instructions of all the owners to insure their interests, it might have enured to their joint benefit alone.
Whatever interest, or whoever.was protected by such policy of insurance, it is clear that the rights of any party insured by it were vested when it was made ; they 'could not be ambulatory until fixed by Stanton & Thomson, nor transferred by them as they thought proper, unless possibly they might have *90 the right of extinguishing any claim hy rescinding the contract, While it .remained a subsisting contract, nobody could claim any benefit under it, except they were designed to be protected by it at the time it took effect as a binding contract. Nothing, therefore, done or said by such agent, after such rights became so fixed, was admissible to prove a subsequent choice by such agents, of the parties to be covered by it or the extent to which they were to be benefited,- or a transfer by them of such right from one to another 5 including, of course, any°distribútion among the owners in severalty, hy way of separating their interests of policies, if originally made either by their intention or any operation of law, the property of all jointly. If any acts or declarations of Stanton & Thomson, after the making of the policy in question, were admissible in evidence at all, they were only so to establish the original intent in making the policy,- and not to prove subsequent changes of interest. They would, therefore,- be subject to the same restriction as to the proximity of the time of their occurrence, and the mode of making them, as all external conduct when admitted to prove mental intent. They would never, however, reach as far back as a continuous course of dealing by such agents with the interests of the plaintiffs under their instructions to insure would. Such a course might be followed as far back as it was unbroken, to settle the question of intent in the particular transaction.
If the question in this case were whether tlfe insurances were made for the owners jointly,- or severally,- alone, without reference to the persons for whom they were made, the fair presumption of fact, if not of law, would be, that they were not made for them jointly. It is not necessary, however, to discuss at length how far the insurance brokers would have violated their duty if they had made a joint insurance. The question would -still remain in any event, - if the insurances were, in fact, several, who was covered by the policy in question.
It is so well settled that a policy made “ on account of whom it may concern,” covers the interest of all whom it was *91 intended to protect, (Crosby v. N. Y. Mut. Ins. Co., 5 Bosw. 369,) as to be so stated in elementary works. (2 Pars. Marit. Law, 29-33, and cases cited. 2 Duer on Ins. §§ 8, 9, 21,24, 30.) Two statutes were passed by the British Parliament, (25 Geo. III, c. 44; 28 Geo. III, c. 56,) requiring the names of agents to be inserted in polices, without, however, stating their agency, (Bell v. Gilson, 1 B. & P. 346, n.) in order to remedy the evils of an earlier custom, of delivering policies in blank. (3 Steph. N. P. 2094, 2095.) Such a form as the present, answers the ends of such statutes. An authority to insure, tends to confer on those giving it the benefit of an insurance merely, by the evidence it affords of intent. It is only when the policy extends to those concerned at the' time of the loss, that subsequent assignees are covered. (Rogers v. Traders’ Insurance Co., 6 Paige, 583.) In this case, the protection of the policy is confined to those interested when it was made, and its applicability turns upon a question of intention in fact. If, then, it was intended to protect, not all, but only one or more, the question to be solved is, who those were.
The individual interest of the defendant Fowler is admitted by the plaintiffs to be covered by the policy ; the only question is as to the remaining two thirds, whether it belonged to the estate represented by Fowler (Peabody’s,) or to the plaintiffs. It is not necessary now to consider any new rights acquired by such defendant, as administrator against his co-defendants, the company, by their indorsement on the policy before the loss, which declares the interest under it to be transferred to such defendant, as .administrator. They could not bar the plaintiffs’ claim ; the pleadings are not framed to try any. issue upon them, and any infringement of them is not .the same cause of action as that set out in the complaint, since that grows wholly out of the original policy. The right of such defendant, as administrator, if any, must rest, not on the transfer to him in April, 1858, but to the right of his intestate under it, when made.
There was no evidence of any intention by Stanton & Thom *92 son to protect Peabody's interest, exclusively, or at all; on the contrary, an entry was made in their books, charging him with premiums of insurance paid by them on other policies, by other companies, in like form ; which was carried into an account rendered at some time after the death of Peabody, and before April, 1858, to the defendant Fowler, as his administrator. ’ The only evidence of any intention is the transfer of the policy in question, nearly a year after it was made, to such administrator. That was too long after the transaction, to show the intent with which it was. .made. The only debatable question of fact, in regard to intention, is, if the policy in question was not made for all the owners jointly, was it intended to be made by Stanton & Thomson for the plaintiffs, and Fowler in his own right alone.
Stanton testified, it is true, that the policy in question was effected on account of three quarters of the ownership of the vessel represented by himthat he took it out for such three quarters; and effected other policies on the same account in the same year. In a previous part of his testimony, he hád, however, stated that he took out the original policies on such three fourths on the same day, and gave to each insurance office all the amount of risk they would take; hut did not state to them for whom he was acting, nor any interest as making up the line of risk § while the companies only stated what account they would take. When the policies ran out, he renewed them, with the same companies, if they would take the same amount; but he never said any thing, to any company, “ about the interest in the three quarters " he wished to cover. As this testimony was given in 1860, respecting transactions from three to five years previous, such witness might have forgotten some of the facts ; hut were such statements hostile to the plaintiffs' case, recourse may be had to other statements of Stanton, as well as his acts, to show that the completeness of his testimony was not perfectly reliable.
Besides, the fact that the amount of valuation in the policy in suit corresponded precisely with the share of the plaintiffs and the defendant Fowler, of interest to he insured, the plain-' *93 tiffs adduced as evidence of the policy in question being obtained to cover such interest, a series of policies alike in form and contents, except as to the duration of the risk, beginning •with the first one obtained after the firm of Stanton & Thomson were directed to insure, the time of the commencement of the risk in each policy being the same as that of the termination of the preceding one. The first of such series was taken out in May, 1854. On the same day, Stanton & Thomson took out a similar one from the Mercantile Mutual Insurance Company, for a sum equal to four sixteenths of the valuation of the vessel in question ($12,500.) Three days afterwards, they took out a like one for the same sum from the Sun Mutual Insurance Co. ($3125,) and in June following, they took out a like one, for the same sum, from the Commercial Insurance Company ; making in all twelve sixteenths, or three quarters of the valuation of the vessel. It can hardly be doubted, where two policies on the same risk, for the same amount, by the same underwriters, continue such risk by its commencement in the second, at the period when the first left it, and thé first is proved to have been made for the benefit of particular insured parties, that the second was made for the same parties, unless some other evidence disproves it, and reconciles such coincidence with a different state of facts.
The only difficulty in the proof in the cause that the plaintiffs were the parties intended to be protected by the policy in question, when it was made, grows out of the nature and admissibility of the evidence offered for the purpose. Most of it consists of entries made in the mercantile boobs of Stanton & Thomson, by their book-keeper, who subsequently became a partner in the firm (John Thomson.) Three of them were charges against the plaintiffs, separately, and the defendant Fowler, of a third of the premium note given by Stanton & Thomson to the defendants, The Atlantic Insurance Company, for the first of the series of policies issued by them for three sixteenths of the valuation of the whole vessel. They were, however, not made until July, 1854, two months after the *94 date of the policy. That delay, however, is accounted for by the book-keeper in several ways. In the first place, the policies were sent to the office of Stanton & Thomson before the premium notes were given, and the delay in signing the notes was owing to a press of business upon Mr. Stanton. Until the premium notes were given, the book-keeper made memoranda of the char-ges on loose slips of paper, from which he entered, them in the books, after the notes were given, and then destroyed such loose notes. He did not always make the entries immediately after the notes were signed; but allowed the memoranda sometimes to accumulate' for two or three weeks, before, from press of business, he was able to enter, the charges on them, and sometimes he waited until all the notes were signed, in order to make the-entries as near together as possible. As Stanton testified, the entries had to be made, because the notes were given, and had to be charged to some one ; but he left it to the discretion of his bookkeeper to make such entries as he saw fit, as to insurance. He used to take a general glance at his books, but never examined them minutely, and might hare seen the entries just spoken of at any time within four years. He “never knew, until after the loss of the ship, to what specific interests the various policies were charged,” but always had an idea of their general form.
At or about the time of charging the plaintiffs and the defendant Fowler with one third of the premium note given to the defendants, The Atlantic Company, in July, 1854, similar charges were made, under the same circumstances, ine the books of Stanton & Thomson, against other owners of such vessel, for premiums of insurance paid to other underwriters, on other policies, for other sums, on such vessel. Most of the charges so made, were contained in accounts • rendered by Stanton & Thomson to such various owners, and received without objection. Their account with the plaintiff Forgay, not rendered until 1857, or 1858, contained charges for one third of premium notes given to the defendants, The Atlantic Insurance Qompg-ny, for policies in every year for the same *95 amount. They rendered no account to the plaintiff Conner, until March, 1856, when they rendered an account, embracing items only as far back as May, 1855, but -including in it a charge for one third of a premium note given to such defendants for a policy during that time. A separate integral commission, and not part of an aggregate commission, for effecting insurance was charged against each owner in his account.
The objection made to the introduction of such entries on the trial was, that they were mere declarations of the members of the firm of Stanton & Thomson, made after the policies were completed, and the rights of the parties fixed, when they had lost all power to interfere with such vested rights, or transfer them from one to another. This objection, I think, is founded upon a misconception of the character of such entries ; they are not declarations amounting to mere admissions ; but are outward manifestations of the intent of the agent, designating the owners and interest intended to be insured. It is very clear that it was part of the duty of the agents, as insurance brokers, to designate to their principals, in some way, the persons and interests intended to be insured. They might have done it by announcing it to the underwriters when the policy was made, or to the owners intended to be insured, forthwith ; yet the one wonld have been but a mere oral statement, and" the other a mere admission. By charging the amount to certain parties, they admitted, at least as far as they were concerned, that such parties were those intended to be insured ; and if Stanton & Thomson had received the amount of the polipy, such entries would have been conclusive against them,- unless .they could show some mistake. The plaintiffs had nothing to do with the fact that the same agents were employed by other owners to insure their interest. They could not insure for all of 'them jointly on such authority, or charge for payments or liabilities for them jointly, or even for a premium of insurance paid on a joint policy. (McCready v. Woodhull, 34 Barb. 80.) So long as the policies were taken in the form in which they were, there was no other mode pf earmarking them, except either by a declaration of *96 trust, which would have been, open to a similar objection, or the more simple mode of charging the premiums to the parties intended to be covered. The question is not whether such entries were good evidence against the other owners to prove that they were not included in the policy in question, but whether they were evidence against the underwriters to prove that the plaintiffs and Eowler alone were. The company, by their policy, agreed to become liable to such persons as Stanton & Thomson intended, and were authorized to insure, and they trusted to, and agreed thereby to rely on usual manifestations of such intent by the acts, declarations and relations of the latter, which would naturally alone constitute its evidence. Entries in their books according to the usual mode of dealing of insurance brokers with their principals, to be transferred into their accounts rendered, was one of the most natural. and easily anticipated of such acts or declarations. They became substantially, therefore, part of the res gestee, unless made at a time, or under circumstances indicative of a motive not necessarily connected with the duty of the agents to their principals or the company ; because to a certain extent they were bound to the latter not to do or say any thing operating by way of evidence to produce a change of the parties insured, without the consent of the company. .Without the proof of authority from other owners to Stanton & Thomson, to insure their interest, and of other insurances made by them on the same vessel, these entries would clearly be proper evidence to charge Stanton & Thomson, and recover from them the amount of the policy, if they had received it; and it was an admission that they were not the parties insured. If all parties had been dead, they would have been admissible as entries against their interest. (Arms v. Middleton, 23 Barb. 571.) Authority given by other owners, and other policies of insurance made, could not affect the admissibility of such entries as evidence, although they might strengthen or diminish their effect as such. Other owners, by employing the same insurance brokers as the plaintiffs, agreed equally with the underwriters, that such agents should determine to whose benefit the polir *97 cies made by them should enure, and agreed in the same manner to be bound by the usual modes of manifesting the intent of the agents as to the parties to be covered by particular policies. Had it been any other species of contract, in which its subject was deficient in an earmark, such as stock bought, could there have been any doubt, when several orders were given simultaneously to a stock broker to buy parcels of the same stock for different principals, that charges in his books against particular principals, for the price paid by him, made simultaneously with the purchase, would be good evidence in favor of the parties entitled to each parcel P Without proof of some intention as to the parties to be insured, the company would not be liable at all; and if proof of authority to insure is evidence of such intention, the selection by the agents, made cotemporaneously with the insurance, is good evidence as between the principals to be insured. Had the old forms of pleading been observed, the action must have been brought at law in the names of Stanton & Thomson, (Jefferson Insurance Company v. Cotheal, 7 Wend. 73 ;) and proof of authority from any one having an interest equal to that insured, would have enabled them to recover. In the distribution by Stanton & Thomson of the proceeds of such recovery, all parties would be bound by the declarations of their common agent, made at the time. The Atlantic Insurance Company, at least, were not prejudiced by the introduction of such entries, and against them they were admissible to show that the agents, by the policy, were insuring an interest they were authorized to insure. I am, therefore, strongly of opinion that the character of the entries, and the persons by whose direction they were made, did not render them inadmissible, if the time and mode of making them did not.
It is said, however, that such entries were made long after the transactions to which they relate, and not cotemporaneously, so as to be part of the res gestee. Perhaps the transaction, so far as it regarded the company, did not embrace quite as much of the conduct of Stanton & Thomson or other parties, as when it included the relation between the plaintiffs- and Stanton & *98 Thomson, or the latter and their other employers. So far as the company were concerned, it was enough that the agents had principals interested in the vessel, whom they were authorized to insure; hut as regarded the plaintiffs and their other employers, the agents were hound to elect which should he covered by the policy, and do some act to manifest such election ; and that was done by charges against the separate parties, and rendering accounts containing them. The making off other policies about the same time, equal to the valuation of the interests under the case of Stanton & Thomson, charging their premiums to different owners, and rendering accounts containing such charges, make the entire body of entries amount to a distribution of the policies among the parties insured by common agents, authorized to insure with whomsoever they pleased, within a reasonable time. To prevent any mistake until the whole were insured, the agents were entitled to insure each interest severally as they pleased, and discriminate'between the parties ; and although it might not have been part of the res gesten, so far as the making of the contract of insurance was concerned, it was, so far as securing it for the benefit of a particular principal was concerned; which both the company and their employers permitted to be done by allowing the contract to be made in an indefinite form. As regarded the other owners, such entries were made in proper time, so as to become part of the res gesta, if made before the agents could be supposed to have had any other motive than discharging their duty to all.
But even if such entries, in order to be admissible against the insurance company, must be so near in time to the transaction, of making the policy binding, so far as they were concerned, as to. form part of it, the evidence establishes that they were so. The policies of insurance were indeed placed in the hands of the insurance brokers, before their notes were given for the premium, but it was not binding until such notes were delivered. Charges were made against the parties intended to be insured, as soon as the notes were given, either in the books of the agents, or in the shape of memoranda to be copie *99 therein. The cause of delay in giving the notes, was a press of business and the cause of delay in making the entries was a press pf business on the part of the book-keeper of the agent, or his desire to make all the entries simultaneously. Stanton’s testimony, shows that each note was to be charged to separate owners, and that he armed his book-keeper with the power of selecting the parties to be insured by each policy; but the whole evidence establishes that each charge against owners insured was virtually simultaneous with the giving of the premium notes. If such entries were at all admissible, to prove for whom the insurance was made, they certainly were near enough in time to the making of the contract, to form part of the res gestee. The lapse of a brief interval of time, so short that it may be fairly inferred that the declaration or act was part of the transaction, or was intended to modify it, does not exclude an occurrence part of the res gestee, particularly where intention is involved. (Selin v. Snyder, 11 Serg. & Rawl. 319, 323. Tompkins v. Saltmarsh., 14 id. 275. Boyden v. Moore, 11 Pick. 362. Handy & Tull v. Johnson, 5 Md. Rep. 450.) Declarations of the reason for trusting a party, made four months afterwards, have been held admissible. (Fellows v. Williamson, 1 Mood, & Mal. 306.) Indeed there.seems to be no good reason why the language of L. Denman, Ch. J. in Rouch v. G. W. Railway Co. (1 Q. B. Rep. 51, 61,) in regard to acts of bankruptcy, where intention is involved, should not be applied to all cases of intention. He there says : “ The nature and strength of the connection (of the admission,) with the act, are the material things to he looked at, and although concurrence of time cannot but always be material evidence to show the connection, yet it is by no means essential.” The same principle has been applied to book entries, made in order to charge another. (Curren v. Crawford, 4 Serg. & Rawl. 5.)
These remarks are applicable to the policies issued in 1854. The policies of the three following years, (1855, 1856, and 1857,) connected with the accounts rendered by Stanton & Thomson, and delivering of some of such policies to other *100 owners by whom they were accepted, and rendering of accounts to the plaintiffs and Fowler, embracing their shares of the premium notes given for the insurances by the Atlantic Company, strengthen the inference as to the design of the insurance agents, and bear out the conclusions of the learned judge before whom the case was tried.
Singularly enough, although numerous facts are contained in the findings of the court at special term, which are evidence merely of the main important fact, to wit, for whom the policy in question was intended to be made ; that fact is not distinctly stated. But the learned judge has stated as a conclusion of law in his decision, that the plantiffs and Fowler were each owners of undivided third parts of the policy in question. His judgment, therefore, can only be sustained by assuming that the policy in question, when it was made, was intended by Stanton & Thomson to protect such an interest. And as the facts proved tend to establish such an intention on their part, it may be assumed that he found it to have existed at the time of making the policy. He could not be presumed to have found that the parties before named became such owners by virtue of any transfer by the agents for making insurance, since all the policies must have been made, either for the benefit of Stanton alone, to cover his interest, or of all the owners of the vessel in question who authorized them to insure, or of such as they charged severally with the amount of the premiums of insurance; and could not be diverted by such agents from them, without their consent. And the testimony is amply sufficient to exclude Stanton and any other owner, except the plaintiffs and Fowler, from being intentionally insured by the policy in question.
With these views as to the nature and origin of the plaintiffs’ rights, it will not be necessary to say much of the power of Stanton, the insurance company, or Fowler, to alter theiq without their consent, which they clearly could not do. J do not, therefore, see how any new rights of the defendant Fowler, - as. administrator, under the indorsement of the company, can come into issue or be litigated or determined in this action. *101 They were no part of the case of the plaintiffs, were utterly immaterial, and formed no defense, unless such appropriation of the policy, destroyed the plaintiffs' original rights, which it could not. It does not appear that the plaintiffs asked for any judgment on that point, or urged it. It is entirely a question between the defendants. Even Fowler, in his answer, only claims the benefit of such policy as being appropriated to him by the act of his agent, with the consent of the underwriters. The defendant Fowler, as administrator, would have been entitled to have the judgment modified by striking out any part which had adjudged that on such indorsement no new contract arose in his favor; but there is no such adjudication in fact, and he is not precluded from an action against the company on such indorsement, if so advised.
All the exceptions to evidence, more or less involve the principles already laid down, and must therefore be overruled. The judgment must be affirmed, with costs.