LIVERPOOL, LONDON & GLOBE INS. CO. v. McFADDEN.

(Circuit Court of Appeals, Third Circuit.   April 20, 1909.   On Reargument, May 27, 1909.)

No. 52.

1. INSURANCE (§ 499*)—FIRE INSURANCE—CONSTRUCTION OF CONTRACT—VALUE OF PROPERTY AT TIME OF LOSS, NOT AT STARTING OF FIRE, TO BE TAKEN.

Under a fire insurance policy which limits the liability of the insurer to the actual cash value of the property insured at the time the loss or damage occurs, the extent of the liability is not the cash value at the time the property is exposed to the danger of loss by the outbreak of the fire, but the actual cash value at the time the loss occurs, which is necessarily to be referred, if material, to the time when in point of fact, as nearly as can be ascertained, the fire reaches and consumes or damages it. Nor is a court authorized to adopt a different construction of the contract in a particular case because the property insured was a marketable commodity and the threatened loss was so extensive that it may itself have enhanced the market value prior to the time when the actual loss occurred.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 499.*]

2. INSURANCE (§ 660*) — FIRE INSURANCE — ACTION ON POLICY — EVIDENCE OF VALUE OF PROPERTY.

In an action on a fire insurance policy to recover for a loss of cotton stored in New York City, the value of the cotton "at the time the loss occurred," where that was during the hours when the Cotton Exchange was open, may be determined by taking the ruling price of "spot" cotton for the day as fixed by the committee of the Exchange.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 660.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Frederick B. Campbell, for plaintiff in error.

J. W. Bayard, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge.   The plaintiff sued to recover the insurance on a quantity of cotton destroyed by fire while stored in certain warehouses in Brooklyn, N. Y.   The fire occurred on June 8, 1905, breaking out in the morning, and, while it was under control by 6 o'clock of the same day, it burned actively for several days afterwards, and the cotton could not be got at or removed for nearly a week.   The policy limits the liability of the company to the actual cash value of the property insured at the time the loss or damage occurs, according to which such loss is to be ascertained and estimated.   A jury being dispensed with, the court found as a fact that the fire started on June 8th, at 8:55 a. m., but that the damage to the cotton was not done until a later hour (just when is not specified); and (evidence having been admitted, over the defendant's objection, of the selling price of cotton on the day of the fire) that the actual cash value at the time when the loss or damage occurred was 8.55 cents a pound.   The contention here is that the cotton should have been valued according

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the market price when the fire, by which it was damaged, first broke out. Just what that was is not shown. But it appears by the stipulation on which the case was tried that at the close of the market on June 7th, the day before the fire, the ruling price for "spot" cotton in New York City, as found by the committee of the New York Cotton Exchange, the recognized authority upon the subject, constituting the actual cash value at that time, was 8.40 cents per pound, and that at 2 p. m., June 8th, when it was next fixed by the committee, which was after the fire had broken out and while it was still in progress, it was 8.55 cents per pound; the lower value, as it is claimed, being the one which the court should have adopted in making its finding.

The actual cash value of the property insured when the loss occurred was a question of fact for the court to pass upon. But assuming that the time to which this is to be referred is a question of law, the rule that the loss has occurred within the meaning of the policy, as soon as the fire breaks out, is more or less arbitrary, and can only be adopted as a matter of necessity, not merely of convenience or policy. It is pressed upon us, however, by considerations of alleged necessity. The contract of insurance, it is urged, is one of indemnity, and the situation has therefore to be looked to. In the present instance, for example, the exact time when the fire reached the cotton, as it is said, is purely conjectural, as it must be in many similar cases. And smoldering along as it did for several days, just when the damage was done, and the loss was complete, cannot be fixed with any certainty. Meantime, the quantity destroyed being large—some 40,000 bales out of a total of 127,000 at the port of New York—the market rose sharply. And the holder of a commodity like cotton having to protect himself against a fall in the price by selling "short," and being forced into the market by the fire to protect his contracts, and the insurance company being also compelled to buy on account of its policy, the market price at which it has to settle the loss is unduly enhanced, to its serious detriment, the fire being thus both the occasion of the loss and the means of aggravating it, unless, as it is claimed, it can be referred, as it should be, as a matter of justice, to a time when the fire first broke out, before it was subjected to these adventitious circumstances. The invariable practice in insurance circles in the case of a continuing fire, as we are further told, is to adjust the loss with reference to the time of its outbreak. And in line with this also, as it is pointed out, where a fire starts just as a policy is about to expire, say 11:55 a. m., the policy running out at 12 noon, even though by far the greater part of the destruction takes place afterwards, beyond the actual term of the policy, yet the loss is regarded as having occurred within the life of it, and the company held liable accordingly. May, Fire Ins. § 401; Rochester German Ins. Co. v. Peaslee Gaulbert Co., 120 Ky. 752, 87 S. W. 1115, 89 S. W. 3, 1 L. R. A. (N. S.) 364; Jones v. German Ins. Co., 110 Iowa, 75, 81 N. W. 188, 46 L. R. A. 860.

But without denying the force of some of the considerations which are so urged, and however properly a policy is held to cover a loss to the risk of which the property insured is initially exposed during its life, although not fully consummated until afterwards, we do not see

our way to adopt the rule contended for by analogy therefrom. The terms of the policy are plain and must be adhered to. The extent of the company's liability, as there declared, is not the cash value at the time the property is exposed to the danger of loss by the outbreak of the fire, but the actual cash value at the time the loss occurs, which is necessarily to be referred, if material, to the time when, in point of fact, as nearly as can be ascertained, the fire reaches and consumes or damages it. It may be arrested before it gets there, or be put out with only trifling loss. It is what happens in this respect, and just as it happens, that controls. Possibly it might conduce to certainty to have the loss estimated as of the time when the fire starts. But there is nothing which compels this construction, and much less is it to be induced by the commercial practices alluded to, even assuming that they are prevalent. Nor, if prices are unduly enhanced thereby, is the hardship that of the insurer alone; the insured, if called upon by business necessities to replace what he has lost, having just so much the more to pay for it. If it is desirable to eliminate questions of this kind, the only way is to change the policy. It may be difficult to do this, being a standard form extensively adopted. But so far as it has been prescribed by statute, the same legislative authority by which it was originally established is capable of reforming it, and can be relied on to do so, if the change ought to be made. It is not, however, for the courts in any event to remake the contract by a construction which, as we view it, is in no wise warranted.

The judgment is affirmed.

## On Petition for Reargument.

PER CURIAM. The only thing that requires notice in the petition for a reargument is the suggestion that there is no evidence that the value of the cotton at the time the loss occurred, as found by the court below, was 8.55 cents a pound. It is a question whether there is any assignment of error which covers this; but, passing that by, the contention has no merit. The value so taken was the price of "spot" cotton the day of the fire, as fixed by the committee of the Cotton Exchange, from actual sales made at different calls of the market, which is clearly sufficient. It is true that the price the previous day was 8.40 cents, and the fire broke out before the market had opened. But we have rejected the idea that the price at the time the fire started, which was pressed upon us as an arbitrary rule on considerations of expediency, was the one to be followed; and, while the fire began at 8:55 in the morning, it did not reach the cotton, according to the evidence, until later, and, being under control at 6 p. m., the damage was probably done somewhere between those hours, which would bring it within the market day, the ruling price for which was thus not improperly taken.

The petition for a reargument is dismissed.