## CORPORATION OF THE ROYAL EXCHANGE ASSURANCE v. UNITED STATES et al.

### No. 190.

Circuit Court of Appeals, Second Circuit. Jan. 14, 1935.

Bigham, Englar, Jones & Houston, of New York City (James W. Ryan and Alfred Ogden, both of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., and William E. Collins, Dist. Counsel, United States Shipping Board Bureau, both of New York City (F. R. Conway, of Washington, D. C., of counsel), for respondents.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Both of these suits were brought under the amendment of 1932 to the Suits in Ad-

miralty Act (46 USCA § 745). Exceptions to the original libels were sustained, and, after the libels were amended, the same ruling was made, and they were dismissed.

The libelant, an insurer of cargo, is seeking to recover, as assignee of those entitled to delivery, for the nondelivery of 480 barrels of wine and 3,883 pieces of lumber laden on the steamship West Aleta at San Francisco for transportation to Cardiff, Wales. The steamship was owned by the United States and operated by the United States Shipping Board Emergency Fleet Corporation, whose name was subsequently changed to United States Shipping Board Merchant Fleet Corporation, and as such it is the respondent in one of these suits. As the libels are in all essentials identical in both suits and the issue is the same, we will treat the actions as one for the purposes of this appeal.

The West Aleta was a merchant vessel engaged in the common carriage of goods. She sailed from San Francisco on January 6, 1920, with this and other cargo of unknown quantity of which a part was evidently additional wine and lumber and was consigned to Hamburg, Germany, and Amsterdam, Holland. She proceeded by a route common both to a voyage to Cardiff and to Hamburg and Amsterdam to a point in the Atlantic from which the direct route to Cardiff was by way of Bristol Channel, but, instead of taking that route, elected to proceed toward Hamburg and Amsterdam by way of the English Channel and stranded on February 12, 1920, on Tershelling Island. If she had proceeded directly by way of Bristol Channel to Cardiff, it is agreed that she would have delivered the wine and lumber there on February 10, 1920, two days before she stranded. It is alleged and not denied that, on the route she was taking when the strand occurred, she could not have reached Cardiff until after February 18, 1920.

The importance of these dates is due to the fact that suit was first brought by the libelant against the United States Shipping Board Emergency Fleet Corporation in the Supreme Court of the state of New York on February 17, 1926, and that suit was removed to the District Court for the Southern District of New York where it was dismissed on February 24, 1930, not for lack of prosecution, but as contrary to the provisions of the Suits in Admiralty Act. The present suits, prosecuted by virtue of the amendment of 1932 to the Suits in Admiralty Act (46 USCA § 745) can be maintained only if the cause of action so revived accrued within six years of the time when suit was brought in the state court. Only the first and third causes of action to recover for nondelivery of cargo are now relied on. The other causes of action were based on alleged deviation, and the appellant has abandoned them.

On February 18, 1920, a salvage contract was made with a salvor by representatives of the respondents. At that time about 600 tons of cargo had been salved and placed in storage ashore.

It is agreed that: "During the entire course of the salvage operations 15,152 casks of wine were salved and taken ashore of which 9,873 casks were delivered in Holland to consignees, 4,179 casks were shipped to consignees at various places, and 1,100 casks, the ownership of which could not be established, were sold at Amsterdam; also, 1,608 pieces of lumber were salved of which 182 pieces were used during the course of the salvage operations, and 1,462 pieces, the ownership of which could not be established, were sold in Holland." It is further agreed that all things done in the salvage of the cargo and the disposition made of it were reasonable and proper under the circumstances and done in good faith. The bills of lading under which these goods were shipped contained broad provisions respecting a choice of route by the ship, and, though it seems to have been at least tacitly understood by the parties that she did exceed her liberties to deviate, we do not now stop to inquire whether a breach of contract by deviation gave rise to a cause of action for nondelivery of cargo on February 10, 1920, when she would have delivered it at Cardiff by direct route to that port.

None of the wine or lumber consigned to the libelant's assignors was ever delivered. None of it could be identified, after the ship stranded, as a part of the shipment except ten barrels of wine. Although the respondent had the right, and the correlative duty (see Gans Steamship Line v. Wilhelmsen [C. C. A.] 275 F. 254) to transship these ten barrels of wine, they were sold in Holland. The proceeds of the sale, which included what was called "Share-blank casks," were paid over to representatives of the consignees, but other than that the goods consigned to Cardiff became a total loss to the consignees.

Since the parties have agreed that the salvage operations were properly conducted, it follows that solely because of the stranding it became impossible to identify and deliver any part of this cargo except the ten barrels

of wine. As to that portion of the cargo there has been an acceptance of the proceeds of the salvage and sale, and the parties have agreed that the disposition made of it was "reasonable and proper in the circumstances," which we take to mean that no right to recover for failure to deliver those ten barrels apart from the failure to deliver the remainder of the shipment is now claimed, and they will be disregarded in what follows.

For present purposes, possible defenses on the merits may be ignored, for we are concerned only to discover whether the remedy for the alleged failure of the respondent to perform the contract was lost by delay in bringing suit. Under the amendment to the Suits in Admiralty Act, the libelant has the burden of showing affirmatively that the suit is timely. U. S. Shipping Board Emergency Fleet Corporation v. Rosenberg Bros. Co., 276 U. S. 202, 48 S. Ct. 256, 72 L. Ed. 531. This libelant of necessity had to allege and prove sufficient facts to bring the alleged breach which was the basis of the action within six years before February 17, 1926. Assuming as we do that no breach that would start the running of the limitation period occurred before the ship stranded February 12, 1920, the vital question is whether the statute then became operative or whether not until February 18, 1920, when the goods would have been delivered at Cardiff but for the strand. This in turn depends upon whether there was a breach of the contract on February 12, 1920, for which suit could have been brought. Rice v. United States, 122 U. S. 611, 7 S. Ct. 1377, 30 L. Ed. 793. When these goods became unidentifiable for delivery to the consignees, their delivery in accordance with the contract of carriage became an impossibility. The libelant has failed to bring its suit within the amendment to the Suits in Admiralty Act because it has failed to show on this record that anything could have been done or omitted by the respondent after February 12, 1920, which would have made delivery possible either on February 18, 1920, or at any other time. So far as a delivery under the contract is concerned, these goods were as effectively lost when the ship stranded as they would have been had they been physically destroyed. When transportation under the contract was prevented and could never be resumed, the contract was broken. It was a contract to transport and deliver, and transportation had to be performed before delivery could possibly be made. Being unconcerned with possible defenses, we need not consider whether

the breach which took place was an excusable one. It is enough that a cause of action on the contract then accrued. Nor does it matter whether the breach should be regarded as actual only as to transportation and anticipatory as to delivery. Though the contract of carriage included both these elements, the contract itself was entire, and, as we have seen, delivery was not promised independently of and separately from transportation but as the object for which the goods were transported. When transportation of necessity ended without the possibility of delivery, the contract to deliver was broken. Whatever the rights of the parties on the merits may be, we now treat the inability to perform after February 12, 1920, as inexcusable. It had the same effect as though there had been a deliberate and intentional breach. As Prof. Williston says (Williston on Contracts, vol. III, § 1326): "A distinction between unexcused inability to perform and willful intention not to perform is not of practical value. As far as performance of the contract is concerned they are of equal effect and should be followed by the same consequences."

As the contract was broken on February 12, 1920, the period of limitation on the right to maintain an action for the breach began to run at that time regardless of when, if ever, it became possible to prove substantial damages. Wilcox v. Plummer, 4 Pet. (29 U. S.) 172, 7 L. Ed. 821; Aachen & Munich Fire Ins. Co. v. Morton (C. C. A.) 156 F. 654, 15 L. R. A. (N. S.) 156, 13 Ann. Cas. 692; Manning v. Perkins, 86 Me. 419, 29 A. 1114; Woodland Oil Co. v. A. M. Byers & Co., 223 Pa. 241, 72 A. 518, 132 Am. St. Rep. 737; In re Herbert & Co., 262 F. 682.

This suit being against the United States and the appellant having failed to show that it had a remedy against the government at the time it was brought, the decision below was without error. Fleet Corporation v. Rosenberg Bros. supra; Finn v. United States, 123 U. S. 227, 8 S. Ct. 82, 31 L. Ed. 128; Compagnie Generale Transatlantique v. United States (C. C. A.) 51 F.(2d) 1053. In Kunglig Jarnvagsstyrelsen v. United States (C. C. A.) 19 F.(2d) 761, the two-year limitation in the Suits in Admiralty Act was in issue, and we there held that the period began to run when coal damaged in transit by fire was sold by the carrier. Obviously, the sale was the thing which made delivery impossible, for coal which was salable could presumably still have been delivered, though damaged, until the sale at Phila-

delphia put that beyond the power of the carrier. The statement about the measure of damages was not essential to the decision.

Decree affirmed.