**EXPORT S. S. CORPORATION et al. v. AMERICAN INS. CO., NEWARK, N. J., et al.**

No. 375.

Circuit Court of Appeals, Second Circuit.

July 31, 1939.

CLARK, Circuit Judge, dissenting.

Haight, Griffin, Deming & Gardner, of New York City (John W. Griffin and Frank J. Foley, both of New York City, of counsel), for appellants Export Steamship Corporation and American Export Lines, Inc.

Tompkins, Boal & Tompkins, of New York City (Arthur M. Boal, of New York City, of counsel), for appellant American Insurance Company.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Ira A. Campbell, J. F. Luley, and W. P. Lage, all of New York City, of counsel), for appellee.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The case raises an interesting point in the law of insurance. The libellant Export Steamship Corporation, owner of the steamship Exmoor, in 1936 took out a time policy of marine insurance with American Insurance Company covering loss arising from liability for damage to cargo. The policy ran for one year and expired at noon on February 20, 1937. From noon of February 20, 1937, forward for one year, the ship owner had a time policy of American Steamship Owners Mutual Protection and Indemnity Association, Inc., covering a like risk. Except as to the period of time covered, there is no substantial difference between these successive policies. Each covered loss arising from the insured's liability for damage done to cargo on the Exmoor. The Exmoor on January 19, 20, and 21, 1937, took shipments of tobacco at Greek and Turkish ports. The tobacco was stowed over and adjacent to a cargo of valonia, a kind of acorn used in tanning. The Exmoor proceeded to various other Mediterranean ports and left the last one on February 25th, bound for New York. On discharge of cargo at New York on March 13th, a large part of the tobacco stowed over the valonia and also some of the tobacco stowed alongside the valonia was found to be seriously damaged. The owners of the tobacco brought suit against the ship owner to recover the loss. The ship owner paid $105,000 in settlement of the claims, and brought the present suit against

the two insurers. It is hardly disputed that the insured is entitled to indemnity for its loss, but due to the fact that the insurance shifted at noon on February 20, 1937, each insurer seeks to cast on the other the obligation to make good.

The district judge, after trial on the merits, found that the damaged condition of the tobacco was due solely to heat and moisture thrown off by the valonia, that it was bad stowage to place the tobacco so near the valonia, a product which frequently throws off excessive heat and moisture, that the damage to the tobacco began a few days after stowage and progressed without interruption until discharge of the tobacco in New York. He further found that substantial damage had been done to the tobacco by February 20th. While some of these findings of fact are criticized, they are supported by the weight of evidence, and we see no reason to disturb any of them. On these findings the district judge held that the first insurer was liable for the full amount of the loss and that the second insurer was not liable to any extent. The controlling consideration between the two insurers, he thought, was that the policy of the first insurer was the policy in force when the bad stowage occurred and when the first damage was done to the tobacco.

We take it that in a time policy insuring against loss arising from legal liability, the insurer is bound to make the insured whole on losses due to liabilities that accrued against the insured during the term covered by the policy. Conversely, the insurer has no obligation as to losses from liabilities accruing before or after the term. The time of accrual of the insured's liability is the determining factor, not the time of an event which ultimately results in liability. Tulare County Power Co. v. Pacific Surety Co., 43 Cal.App. 315, 185 P. 399, is an illustration. There the defendant insured the plaintiff for one year against loss from claims for damages based on bodily injuries or death. During the year one Bergen was killed because of the plaintiff's faulty installation of wires. The wires had been installed some months prior to the period covered by the policy, and the defendant sought to escape liability on that ground. The court held that the defendant was liable under the policy, the plaintiff's liability having accrued within the policy period. The same principle is found in other kinds

of insurance. A simple case is that of a term life insurance contract, with the insured dying after expiration of the term. The insurer cannot be made to pay, no matter how imminent death was at the expiration of the term. Howell v. Knickerbocker Life Ins. Co., 44 N.Y. 276, 277, 4 Am.Rep. 675. So too with insurance against loss of property. The insurer must respond for the loss sustained during the term from the causes insured against, and to ascertain what that loss was later developments may be looked at. But the policy does not cover loss incurred after the term, however inevitable the loss may have been from causes operating during the term. Coit v. Smith, 3 Johns.Cas. 16; Howell v. Protection Insurance Co., 7 Ohio 284, pt. 1; Hare v. Travis, 7 Barn. & C. 14; Knight v. Faith, 15 L.R.Q.B.D. 649. See, also, Hough v. Head, 5 Asp. Cas. 505. We think that the district court was in error when it held that where losses will inevitably result after the expiration of the policy from causes operating during the term, the insurance covers all the loss.

In fire insurance cases there is a departure from the general rule. It is held that if the policy expires after a fire has commenced to burn the property insured, and the fire is a continuous one extending beyond the period of insurance, the insurer is liable for the entire loss. Globe & Rutgers Fire Ins. Co. v. David Moffat Co., 2 Cir., 154 F. 13; Hartford Fire Ins. Co. v. Doll, 7 Cir., 23 F.2d 443, 56 A.L.R. 1059; Davis v. Connecticut Fire Insurance Co., 158 Cal. 766, 112 P. 549, 32 L. R.A.,N.S., 604; Wiig v. Girard Fire & Marine Ins. Co., 100 Neb. 271, 159 N.W. 416, L.R.A.1917F, 1061. Separation of the loss, it is said, would be impossible as a practical matter, any attempted division resting on a mere guess. So the fire is deemed one event, taking place when the fire touches the insured property. See Davis v. Connecticut Fire Ins. Co., supra. The rule works to the advantage of the insured. We cannot say whether the same reasoning would be applied to the prejudice of the insured in a case where a fire had commenced to burn the property ten minutes before the commencement of the period of insurance and the bulk of the destruction was done after commencement of the period. The courts have refused to extend the rule to a case where the fire has not yet touched the insured property at the expiration of the contract of insurance, although its destruction by fire raging in adjoining property may then be inevitable. In such cases the general principle is followed that the insurer is not liable for a loss occurring after the period covered. Kiesel & Co. v. Sun Ins. Office, 8 Cir., 88 F. 243; Rochester German Ins. Co. v. Peaslee-Gaulbert Co., 120 Ky. 752, 87 S.W. 1115, 89 S.W. 3, 1 L.R.A.,N.S., 364, 9 Ann.Cas. 324; 19 Harv.L.Rev. 217. The courts have also refused to say that a fire is to be deemed one event taking place at its commencement, where a fire burns for several days during the continuance of the policy and the market value of the insured property increases during the course of the fire. Liverpool, London & Globe Ins. Co. v. McFadden, 3 Cir., 170 F. 179, 27 L.R.A.,N.S., 1095.

When did the libellant's liability for cargo damage accrue? Clearly not at the time of stowage of the tobacco. It is certain that there was no liability until actual injury was done to the tobacco. From that time a cause of action against the libellant accrued in favor of the cargo owners. Corporation of Royal Exchange Assurance v. United States, 2 Cir., 75 F. 2d 478. It is important to observe, however, that the infliction of the damage was not a single event. The corrupting heat and moisture flowed steadily from the valonia to the tobacco for more than a month. The situation was the same as if the ship had sprung a leak, with the ship owner at fault, and sea water had poured in on the tobacco day after day. See Hare v. Travis, 7 Barn. & C. 14. We are of opinion that the first insurer should make good to the amount of the libellant's liability up to the expiration of the first policy, noon on February 20, 1937, and that the second insurer should be held for the amount of the liability that accrued during the operative period of the second policy, from noon on February 20, 1937, to the end of the voyage and discharge of the damaged cargo. There was evidence that about 26 percent of the total damage had occurred by noon of February 20th and 74 percent after that time. Kemp, an expert witness called by the libellant, gave these figures as his estimates. He described the process by which he arrived at these estimates. We see nothing unreasonable or unlikely in them. His estimates were supported by those of Wiley, another wit-

ness called by the libellants. The testimony of these witnesses was uncontradicted, save that one of the other witnesses said that in his opinion the amount of damage from day to day could not be determined. They were impartial witnesses as between the first insurer and the second insurer. Under the circumstances these estimates should be accepted as reasonably sound. Absolute accuracy is of course impossible.

■ The first insurer urges here, as it did in the court below, that no liability accrued against the libellant until March 13th, when the libellant failed to make delivery of the tobacco in good order and condition, and that the entire loss should therefore fall on the second insurer. It is pointed out that the cargo owners, in their claims against the libellant, charged failure to deliver the shipments in good order and condition as the ground of the claims. The argument is not without force. But a cause of action had arisen against the libellant during the voyage, when the tobacco began to feel the effects of the heat and moisture, as we have already said, and we agree with the district judge that the obligations of the successive insurers should not depend on the form of pleading adopted by the cargo owners. The soundness of the first insurer's argument on this head may be tested by treating the case as if no second policy of insurance had been taken out and the suit were one on the first policy alone. Could it be fairly claimed that the insured should recover nothing on the policy because the cargo owners based their claim against the insured on the damaged condition of the cargo at the time of discharge, which time was after expiration of the policy? We think it evident that in such a case the insured would recover to the extent that the tobacco was damaged during the term of the policy. So too the soundness of the second insurer's position that it is liable for nothing may be tested by dropping the first insurance out of the picture and taking the case as if the ship owner had had no insurance prior to February 20th. It is safe to say that the insurer with a policy taking effect on February 20th would not get off unscathed, with proof in the case that damage was done to cargo by outside forces after that date and that resulting liability was brought home to the insured. The result that is fair and in accordance with the engagements made in the policies is to hold each insurer answerable for the loss on the liability that accrued during the term of the policy written by such insurer, and that liability is measured by the extent of the damage done to cargo during the period of the policy.

The first insurer is liable for 26 percent of the loss and the second insurer for 74 percent. The decree will be reversed and the case remanded to the district court for further proceedings in accordance with this opinion.

CLARK, Circuit Judge (dissenting).

I can agree with the basic principle of insurance law as stated by my brothers and nevertheless remain convinced that both on the authorities and on grounds of practical policy the court below reached the correct conclusion in finding the first insurer responsible for the loss. D.C., 26 F.Supp. 79. As held in Corporation of Royal Exchange Assurance v. United States, 2 Cir., 75 F.2d 478, the general intent of these time policies is to provide liability insurance, and not to insure against the happening of a single event, such as nondelivery of goods, or death as in the ordinary policy of life insurance. The opinion states that in such a policy as is here involved, "the insurer is bound to make the insured whole on losses due to liabilities that accrued against the insured during the term covered by the policy." With that I agree. The question, then, is as to when liability—duty to pay—accrued. The answer, I believe, is clear that the carrier's duty to the shipper, and hence the insurer's duty to the carrier, arose once the tobacco showed damage. I would agree that an accident or default without damage computable in money does not show liability any more than mere carelessness without injury shows actionable negligence. (This is the explanation of decisions declining to carry the principle of the fire insurance cases to the extent of holding that when a fire spreads to a different building the time of the loss is the time of origin of the fire; but there is loss, as the opinion states, "when the fire touches the insured property.") And once liability has accrued, it seems clear that the entire loss is to be included.

Among direct cases supporting this conclusion are Coit v. Smith, 3 Johns.Cas.,

N.Y., 16, cited in the opinion, and the well briefed and well considered case in the New York Court of Appeals, cited below, Duncan v. Great Western Ins. Co., 1 Abb. Dec., N.Y., 562, 564; affirming Crosby v. New York Mutual Ins. Co., 5 Bosw. 369, 18 N.Y.Super.Ct. 369, where William M. Evarts was counsel for the defeated insurance company. The court there held that the loss of the vessel insured must have been "deemed effectual and certain from the time the vessel was so injured and crippled as that her destruction became inevitable," and that "the claim for damage must be deemed to have attached when the injury was received which ultimately, and before she could be brought to port, caused the destruction of the vessel." And the fire insurance cases, which admittedly support this holding, are not an exception to the rule, but are simply the rule. Professor Wambaugh states in 17 Green Bag 674, 675, that the doctrine of the fire loss cases comes really from the "death wound" cases of marine insurance, and he seems to be supported by that line of English decisions which hold that the loss of the vessel insured occurs when she receives her "death wound," even though she may not break up until after the policy has expired. Shawe v. Felton, 2 East, K.B., 109; Knight v. Faith, 15 L.R.Q.B.D. 649, 667; 1 Arnould on Marine Insurance, 12th Ed., §§ 437, 438. Applications of the same principle to miscellaneous forms of insurance are found in Phillips v. Holmes Express Co., 229 N.Y. 527, 129 N.E. 901; affirming 190 App.Div. 336, 179 N.Y.S. 400 (dealing with workmen's compensation insurance); and Burkheiser v. Mutual Accident Association of the Northwest, 7 Cir., 61 F. 816 (dealing with beneficial accident insurance); and see 5 Couch, Cyclopedia of Insurance Law, 1929, § 1213; 4 Joyce, Insurance, 2d Ed., § 2793. Outside of cases of special agreement (such as Liverpool, London & Globe Ins. Co. v. McFadden, 3 Cir., 170 F. 179, 27 L.R.A., N.S., 1095; certiorari denied, 215 U.S. 604, 30 S.Ct. 405, 54 L.Ed. 345) and the special contract upon which all life policies are based, I read no case as going the other way, except perhaps Howell v. Protection Ins. Co., 7 Ohio 284, pt. 1, where recovery was given for only the partial loss occurring during the life of the policy. The question there may well have been, however, whether the vessel was lost in attempting to pursue the voyage. 1 Phillips on Insurance, 3d Ed., 685, 686. The other cases cited in the opinion where there was no loss during the life of the policy are clear and are not in opposition.

On grounds of practical policy this rule would seem to be sound. Any attempt to guard against such a loss in the future must be directed to the act of improper stowage. It is entirely impracticable to expect constant unloading of the vessel in an endeavor to detect and correct defects of stowage. The effective human act which caused the loss occurred once and for all as the initial step in the voyage; it could not thereafter be changed or corrected under the circumstances, since no one knew that it had occurred. The situation would be quite different where a vessel is allowed to continue in an unseaworthy condition or where other discoverable defects are not corrected. Taking the practical test suggested in the opinion, one may venture to doubt that had there been no later insurance at all, the first insurer would have been relieved from paying all the loss. On the other hand, with the efficient cause operating a month before the second insurance took effect, one may doubt, too, whether many would confidently expect the second insurer to be held if that were the only insurance in effect. It would seem to me that considerable disruption in the business of shipping and of marine insurance must result from the rule here announced, which holds that there exists some continuing failure of duty and resulting liability of the carrier during all the course of the voyage. Practically speaking, obedience to such a duty cannot be enforced; for it is obvious that carriage of freight by ships cannot go on if seamen must continually change load and reload in the hope of disclosing and correcting some hidden defect of stowage.

Unless such a continuing duty exists, there can be no legal justification for an apportionment of damage. And there are practical difficulties in the way of such apportionment. The testimony upon which it is based involves a theoretical reconstruction of events which no one observed. As the opposing witnesses pointed out, it is the building of an unreal structure by experts, upon premises which are open to question. It assumes, first, that for a period after the stowage no damage occurred, and, second, that thereafter the damage accrued steadily day by day. A different

14

choice of time when the damage began would, of course, lead to a quite different result. Indeed, only one expert, Kemp, gave the figures relied on for the apportionment ordered here of 26 per cent and 74 per cent; he concluded that substantial damage to the tobacco would begin about two weeks after the loading was completed, or on February 4. The other expert, Wiley, who is supposed to have confirmed these figures, considered that the damage would start in three or four days and actually adopted as his estimate of the relative damage before and after February 20 figures of 30 per cent and 70 per cent respectively—an estimate which if followed would lead to a difference of something over $4,000 from the result here ordered. Four others, however, testified that the damage would start practically at once when the loading was completed. I fear that Kemp was the more believed in proportion as he was the more dogmatic. Moreover, this theoretical allotment of loss day by day, once it had started, does not allow for the fact that fine tobacco, even though only slightly damaged, has suffered a substantial loss in value when it is no longer high grade—a loss not accurately measured by time and space elements, just as the greatest loss in value of an automobile occurs at once when it becomes a "used" and no longer a "new" car. In place of the various assumptions of this witness, another of the carrier's experts stated with refreshing candor that he could not make an estimate of the damage on an intermediate day and that he did not believe anyone else could—a conclusion, in my judgment, worthy of credence.

The stowing of the valonia took place on January 17, that of the tobacco on January 19 to 21, the change in insurers occurred on February 20, and the loss was discovered in New York on March 13. The first insurer had contracted to give insurance for about three-fifths of the period involved, including the time when the acts causing the loss occurred. It is now to be called upon to pay only about one-quarter of the loss. The balance is assessed against the second insurer, who carried the insurance for two-fifths of the voyage, during which time no default occurred. I think that neither on practical grounds nor on the authorities can the result be justified, and that the decree below should have been affirmed.