UNITED STATES FIDELITY AND GUARANTY COMPANY *v.*
AMERICAN INSURANCE COMPANY, EMPLOYERS COMMERCIAL
UNION INSURANCE COMPANY, ADAMS CLAY PRODUCTS
COMPANY.

[No. 2-575A121. April 19, 1976. Rehearing denied August 9, 1976.
Transfer denied November 3, 1976.]

*William B. Weisell, David T. Kasper, Locke, Reynolds, Boyd & Weisell,* of Indianapolis, for appellant.

*Tony Foster,* of Indianapolis, *Keith C. Reese, Rocap, Rocap, Reese & Young,* of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought by Insurer-Appellant United States Fidelity and Guaranty Company (USF&G) from a Declaratory Judgment which imposed liability on it as one of three insurance carriers providing products liability coverage during a period of time when bricks manufactured by Adams Clay Products Company (Adams) and incorporated into certain structures spalled (deteriorated), claiming liability was extended beyond its period of coverage.

We affirm.

## FACTS

The following facts appear to be undisputed:

Adams manufactured bricks to be used in the construction of brick structures. From some time prior to March 15, 1971, and extending to October 1, 1973, Adams carried successive products liability insurance policies with three insurance companies—USF&G being the first, followed by Employers Commercial Union Insurance Company of America (Employers) and American Insurance Company (American).

The relevant provisions of each of these three contracts of insurance have almost verbatim similarity. Each insurance company agrees to:

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

\* \* \*

Coverage B. property damage to which this insurance applies, caused by an occurrence. . . .

Occurrence is defined as "an accident . . . which results, during the policy period, in . . . property damage neither expected nor intended from the standpoint of the insured." Property damage means "injury to or destruction of tangible property." Each policy makes it clear that this insurance "applies only to . . . property damage which occurs during the policy period within the policy territory."

Bricks manufactured by Adams, used in the construction of a house and two decorative markers owned by Byron Turner (Turner), spalled—chips or flakes of the brick suface broke off—during the policy periods of all three insurers. Adams reached a settlement with Turner for damage done to Turner's home by the spalling. When Adams submitted claims to Employers and American, they refused to admit liability and defend Adams against further claims by Turner for additional damage caused by the spalling bricks. Adams thereafter filed suit against Employers and American.

On Motion of American, the trial court joined USF&G as an additional party.

The parties crossed and counterclaimed, finally asking the trial court for a Declaratory Judgment setting out the respective rights and duties of Adams and the three insurance companies. The trial court entered the following Declaratory Judgment accordingly:

### JUDGMENT ON COUNTER CLAIM[1]

Upon the Counter-Claim herein, American Insurance Company vs Adams Clay Products Company, United States Fidelity and Guaranty Company, and Employers Commer-

---

1. While the judgment is somewhat lacking in clarity it is undeniably susceptible of a reasonable construction that USF&G was adversely affected by claims of loss or damage based upon spalling of brick products "first discovered flaking or spalling and defective during its

cial Union Insurance Company of America, seeking declaratory judgment of the respective coverages of the Product Insurers of Adams Clay Products Company, manufacturer and seller of its product, common brick, the respective parties have filed or joined in the filing of certain stipulations of facts and thereby have stipulated:

(1) That each insurer of the brick product of Adams Clay Products Company affords coverages during the following policy periods, as follows:

UNITED STATES FIDELITY AND GUARANTY COMPANY, for policy period of several years before and up to March 15, 1971;

EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA, for policy period of March 15, 1971, and expiring March 15, 1972;

AMERICAN INSURANCE COMPANY, for policy period of March 15, 1972 and expiring March 15, 1973, which policy was renewed March 15, 1973, which renewal was terminated October 1, 1973.

(2) *That during these insured policy periods, claims of losses have been made against the insured, Adams Clay Products Company, due to the failure of its product, by the product spalling or flaking after such product has been incorporated into a structure.*

---

. . . policy period," which was, in the case of USF&G, before and up to March 15, 1971. From oral argument, the briefs, and the wording of the judgment, it is obvious the trial court and the parties rightfully considered there to be an actual controversy in which the parties have a substantial interest.

The tendency has been to liberalize the granting of declaratory judgments. *See Reafsnyder* v. *City of Warsaw* (1973), 155 Ind. App. 455, 293 N.E.2d 540; 4 W. HARVEY & R. TOWNSEND, INDIANA PRACTICE 6; Primer of the 1969 Indiana Rules of Procedure Comment, page 227. Neither the language of Trial Rule 57 (Declaratory Judgments) nor the cases since that rule was adopted prevent this case from being decided on its merits.

Furthermore, we must indulge in all reasonable presumptions in favor of the rulings and judgments of a trial court. *New York R.R. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N.E.2d 453; *Pennsylvania R.R. Co.* v. *Mink* (1966), 138 Ind. App. 311, 212 N.E.2d 784; Trial Rule 52(A); AP. 15(E). And it is well established that a judgment of a trial court will be affirmed if sustainable on any legal theory. *Devine* v. *Grace Construction & Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862; *Montgomery Ward & Co., Inc.* v. *Tackett* (1975), 163 Ind. App. 211, 323 N.E. 2d 242; *Snouffer* v. *People's Trust & Savings Co.* (1965), 140 Ind. App. 491, 212 N.E.2d 165; *Combs* v. *Keller* (1957), 127 Ind. App. 531, 142 N.E.2d 474. Nor are the findings or judgment clearly erroneous under TR. 52(A).

(3)  That there is a substantial and actual material controversy sufficient for a declaratory judgment between insurers and Adams Clay Products Company as to the extent and definition of coverage of the respective insurers upon such *claims of losses of damage based upon spalling of the insured's brick product discovered in one insurer's policy period and extending into another insurers' policy period,* or into a time period in which Adams Clay Products Company was or is uninsured.

IT IS THEREFORE ORDERED AND ADJUDGED, upon the Counter Claim of American Insurance Company vs Adams Clay Products Company, United States Fidelity and Guaranty Company, and Employers Commercial Union Insurance Company of America:

(1)  That each insurer affords product liability coverage of the Adams Clay Products Company, brick product, as follows:

UNITED STATES FIDELITY AND GUARANTY COMPANY, for policy period of several years before and up to March 15, 1971;

EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA, for policy period of March 15, 1971, and expiring March 15, 1972;

AMERICAN INSURANCE COMPANY, for policy period of March 15, 1972 and expiring March 15, 1973, which policy was renewed March 15, 1973, which renewal was terminated October 1, 1973.

(2)  That such product coverages do not afford Adams Clay Products Company coverage for loss of or claim against Adams Clay Products Company for the loss of or damage to the product itself, due to the failure of the product to function, and Adams Clay Products Company, by such coverages, is required to furnish the replacement for the product itself or the cost thereof in any such claims for losses or damages by product.

(3)  *That each insurer does afford coverage for damages and losses to structures caused by such brick product which was first discovered flaking or spalling and defective during its above respective policy period,* and that coverage includes: (a) diminution in value of structure caused by such product failure, or (b) the cost to repair damage to structure or replace such defective insured brick upon the structure, whichever is the lesser loss or cost, excluding, however, the actual replacement or furnishing of the brick itself, or

the cost thereof, as excluded from the insurers' coverage as adjudged in (2) above.

(4) That the coverage each insurer affords Adams Clay Products Company for damage or loss to structure *first discovered* during each respective policy period above, includes damage or loss by the spalling by defect of insured's brick product in such structure extending beyond such insurer's policy period and which may continue into another insurer's subsequent policy period, to the extent as defined in (3) above.

(5) That the coverage each insurer affords Adams Clay Products Company does not include any damage or loss covered by defective products first discovered defective outside its respective policy period whether such first discovery of defect is within another insurer's policy time period or within the time period Adams Clay Products Company was or is uninsured.

(Emphasis supplied.)

The trial court also entered an order in accordance with Trial Rule 54(B). USF&G now appeals the trial court's Declaratory Judgment.

## ISSUE

The sole issue for determination is:

Is each insurer liable only for a quantum of damage or loss corresponding to the number of bricks spalling during its period of coverage, or, is the insurer during whose period of coverage the damage or loss from spalling is first discovered liable for *all* loss or damage to the structure occurring thereafter, even though such loss or damage extends beyond its period of coverage?

*CONTENTIONS*—USF&G contends that if a given number of bricks spall during a year in which it provides coverage, the structure is only damaged to the extent of the number of bricks spalling during such period.

American and Employers counter that the first spalling bricks are an indication of possible damage to the *entire* brick structure. They argue that the insurer providing coverage when this damage first becomes apparent must bear the

entire liability for all damage to this structure thereafter caused by Adams' defective bricks.

## DECISION

*CONCLUSION*—It is our opinion that the insurance company providing products liability coverage at the time the spalling first becomes apparent is responsible for all damage or loss to the structure.

The parties agree the spalling is appalling. They disagree as to which insurer(s) is liable for the damage.

Unfortunately they tender us no cases in point to guide our faltering footsteps . . . and there appear to be none.

Decided cases in this area have dealt mainly with the insurer's liability to the manufacturer for the kind of damage (discoloration, unsightly appearance) rather than the question of which of several successive insurers is to bear the loss. The liability question seems to have been settled in favor of the manufacturer. So now we must travel the next step by deciding the narrow question of how the burden of liability should be borne by successive insurers. A logical starting point is the relevant clauses of each insurer's contract.

The three insurers seem to agree with the general rule that the insurer providing coverage only at the time of the product's manufacture, (prior to its being incorporated into a structure), has no liability for damage later caused by the product:

[T]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. Annot., 57 A.L.R.2d 1385, 1389 (1958). *See* CCH PROD. LIAB. REP. ¶ 3520 (1974) (and cases cited therein) ; 3 M.B. PROD. LIAB. § 50.02 (1975) (and cases cited therein).

The insurance company which incurs liability under this general rule then is the one providing coverage to the manu-

facturer at the time that the complaining party—the structure owner—suffered damage to his structure from the spalling bricks.

Each of these policies provides that the insurer will indemnify the manufacturer for all sums he is legally obligated to pay as "property damage." So the crux of the controversy centers around what the term "property damage" contemplates. What is "property damage" under these circumstances?

It has been held not to include the individual product itself. Differently stated, the manufacturer will not be reimbursed by the insurance company for the cost of the actual individual products which he may be called upon to replace in the damaged structure. *See Western Cas. & Sur. Co.* v. *Polar Panel Co.*, 457 F.2d 957 (8th Cir. 1972) (*Western* involving an exclusionary provision in a products liability policy identical to the one here set out *infra*).

Such a conclusion holds true in view of the exclusion in these policies:

This insurance does not apply:

\* \* \*

to property damage to the named insured's products arising out of such products or any part of such products. . . .

So Adams cannot expect indemnification from an insurer for the cost of the individual bricks in a damaged structure which he may be called upon to replace[2] . . . and the parties agree with this conclusion which is stated in Point Two of the judgment.

If "property damage" does not include the individual defective bricks, what does it include?

It includes damage *to the structure. Bowman Steel Corp.* v. *Lumbermen's Mut. Cas. Co.*, 364 F.2d 246 (3d Cir. 1966) (and cases discussed therein—evolving from *Hauenstein* v. *St.*

---

2. *See Western Cas. & Sur. Co.* v. *Polar Panel Co., supra.*

*Paul-Mercury Indem. Co.* (1954), 242 Minn. 354, 65 N.W.2d 122). "Property damage" in this sense was elaborated on in *Dakota Block Co.* v. *Western Cas. & Sur. Co.* (1965), 81 S.D. 213, 132 N.W.2d 826, 830:

> [C]ommon sense dictates there was substantial property damage to the entire school building when the exterior walls presented a faded, discolored, mottled and unsightly appearance in contrast to a uniform and eye-pleasing manifestation envisioned by the original plans. To say the damage in such instance can be confined to the blocks as distinct from the school building . . . is unrealistic and loses sight of the forest because of the trees.

But what is damage to the structure? Is it damage caused by the bricks spalling in a given policy period, or, is it possible damage to the entire structure as evidenced by the initial spalling?

If the quantum of damage (excluding the cost of the brick) is limited to the damage caused by the corresponding number of bricks which have spalled, then there may be damage arising in several policy periods because the spalling may occur gradually. However, if the initial spalling is notice of possible defectiveness of the entire structure, all damage will accrue in the policy period when the spalling first becomes apparent.

Our conclusion must be that "property damage" occurs to the entire structure in the policy period when the spalling first becomes apparent and is not equated with the number of bricks which have spalled in a given policy period.

Aside from the logic of fixing liability at a point when the gradual process of spalling appears to signify certainty of damage or loss to the entire structure, there is another reason to reject the spalling-by-the-year concept.

If the homeowner suffers a distinct injury as each group of bricks in the structure spalls in a given policy year, a multiplicity of actions will result. Because spalling may be gradual it could take many years to resolve the issue . . . an

absurdity, and more, the statute of limitations would become meaningless.[3]

The question we cannot answer on appeal, but must leave for the trier of fact, is when sufficient spalling occurs to put a reasonable person on notice of a possibly defective structure—and thereby determine the insurer at that point who must bear responsibility for the loss.

USF&G finds encouragement in *Export S.S. Corp. v. American Ins. Co.*[4] in which the first insurer was held liable for 26% of the damage to tobacco carried by libelant's ship and the second insurer liable for the remaining 74% of the damage occurring during a voyage. We find the dissent to be more persuasive and more perceptive:

> [T]his theoretical allotment of loss day by day, once it had started, does not allow for the fact that fine tobacco, even though only slightly damaged, has suffered a substantial loss in value . . . a loss not accurately measured by time and space elements. . . .[5]

For the reasons stated, the judgment of the trial court is affirmed.

White, J., concurs in result.

Sullivan, J., dissents with opinion.

### DISSENTING OPINION

SULLIVAN, J.—This appeal is taken pursuant to TR. 54 (B) from a declaratory judgment entered upon a counterclaim as that judgment is interpreted by USF&G. The appellant's construction of that judgment—a construction which is adverse to USF&G's financial interest—is not in my view a correct construction. The judgment does not declare, as my colleagues

---

3. In a recent brick spalling case in Pennsylvania—*DeMatteo* v. *White* (1975), 233 Pa. Super. 339, 336 A.2d 355, 16 UCC REP. SERV. 926—the court noted that when a homeowner sues the builder, the statute of limitations "period begins to run from the date when the breach or negligence could reasonably have been discovered." 233 Pa. Super. at 346, 336 A.2d at 359, 16 UCC REP. SERV. at 930.

4. 106 F.2d 9 (2d Cir. 1939) (Clark, J., dissenting).

5. *Id* at 14.

imply, that USF&G is liable for *all* damage to the structure if it be determined that the initial spalling which caused *some* damage, occurred during its policy period; nor does it declare, as assumed by USF&G, that USF&G is liable for *any* damage occasioned by spalling which was not discovered during the policy period of USF&G. (There is a difference between discovery of damage to the structure and discovery of spalling which causes damage.)

In attacking the declaratory judgment, appellant USF&G summarizes its argument as follows:

"Therefore, the coverage provided by the USF&G policy is limited to damage from bricks which spall during the policy period and does not extend to damage from bricks upon the same structure or other structures which spall outside of the policy period."

I read the declaratory judgment rendered to be not inconsistent with USF&G's somewhat convoluted appellate position. I therefore question whether USF&G has been aggrieved by the judgment.

Judge Buchanan's opinion herein acknowledges that an insurer's liability is fixed at the time damage to the structure is suffered from the spalling bricks. Yet it ignores that rule by fixing liability as of the time initial spalling occurs if such spalling is sufficient to give notice of possible future damage. I am unable to accept that resolution of the problem.

To be sure, that resolution is one which is easily applied and it does, as noted by Judge Buchanan, avoid claims against more than one insurer. But legal principles are not created nor do they exist merely because they are easily applied. If the contracting parties did not agree to insure against damage caused by bricks which spall beyond a particular policy period, we may not impose such liability. In my view, the result reached by my brothers does precisely that.

Each insurer before this court is liable only for that damage occasioned by products defects, i.e., spalling, discovered during its policy period. The extent of damage is not neces-

sarily directly proportionate to the number of bricks which spall. It is conceivable that a structure will be diminished more in value by the first 10 bricks which spall, than such value will be further diminished by subsequent spalling of any like number of bricks. Additionally, the extent of diminution in value may well depend upon the location of the bricks which spall.

In short, the liability as agreed to by the three insurers here, is tied to damage suffered not to damage which has not yet occurred. If apportionment of the total damage must be made between or among various insurers and if that apportionment is difficult—so be it! That is what their respective policy contracts require.

Paragraph 4 of the judgment does not reflect adversely upon the construction which I place upon the judgment as a whole. That paragraph is apparently read by my colleagues to provide coverage for future damage caused after the insurer's policy period if some or any damage was caused or likely to be caused during the policy period. The paragraph does not so provide. It states merely that a particular insurer is liable for damage which is first discovered during the policy period but which damage extends into another policy period. The effect of paragraph 4 of the judgment is, in my view, to protect the insurer at the time the total and final damage to the structure becomes fixed. Damage occasioned by bricks which spall during one policy period is recoverable as against that insurer and cannot be attributed to the insurer in whose policy period the final and culminating appearance of damage is discovered.

In essence then, I construe the judgment to fix liability as argued by USF&G and find such judgment in keeping with the insurance provisions before the trial court. Accordingly, I would dismiss the appeal upon the ground that appellant USF&G has not been aggrieved by the decision below.

Even were I to subscribe to a possible reasonable construction of the judgment as it is interpreted by the parties

and by Judge Buchanan's opinion, I would be unable to concur in affirmance. Under such circumstance the judgment could not be held to fulfill the purpose of the Indiana Declaratory Judgment Act, as set forth in Ind. Ann. Stat. § 34-4-10-12 (Burns Code Ed. 1973) :

> ". . . to afford relief from *uncertainty and* insecurity with respect to rights, status and other legal relations. . . ."

A judgment susceptible to more than one reasonable interpretation does not in my view afford relief from uncertainty. The judgment does not, as is its purpose, make the rights of the parties "clearly apparent". *See Brindley v. Meara* (1935), 209 Ind. 144, 198 N.E. 301.

Thus even if my construction of the judgment is not the only reasonable construction which might be placed upon it, such construction, if at all reasonable, makes it improper to affirm. At bare minimum we should reverse and remand for entry of a judgment which affords "relief from uncertainty" and which makes the rights of the parties "clearly apparent". Such disposition would not be inappropriate here since the complaint in the basic action by Adams Clay Products against American Insurance Company and Employers Commercial Union Insurance Company is still pending before the trial court.

NOTE.—Reported at 345 N.E.2d 267.