609 P.2d 598

**STATE of Arizona, Defendant-Counterclaimant, Third Party Plaintiff-Appellant,**

v.

**GLENS FALLS INSURANCE COMPANY, a New York Corporation, and the Home Indemnity Company, a New Hampshire Corporation, Third Party Defendants-Appellees.**

No. 1 CA–CIV 4333.

Court of Appeals of Arizona,
Division 1,
Department A.

March 27, 1980.

An action was brought on July 19, 1976, as a class suit by depositors of Lincoln Thrift Association and U. S. Thrift Association against the State of Arizona.[1] The suit alleged failure of the State to regulate and supervise the two associations in a manner required by law. The depositors alleged substantial losses of money placed with both associations.

In another action from which this appeal arises, Travelers Indemnity Company, a Connecticut corporation, brought suit against the State of Arizona (referred to hereafter as the State) and certain other defendants, including state agencies and former state officials, for a declaratory judgment as to whether Travelers had a duty to defend and pay damages in the class action brought by the depositors of the two thrift associations. In addition to answering and filing a counterclaim, the State filed a third party complaint which joined three other insurers, including Glens Falls Indemnity Company, a New York corporation (Glens Falls) and The Home Indemnity Company, a New Hampshire corporation (Home), (sometimes referred to here as the insurers). The third party complaint sought a declaratory judgment concerning the obligation of Glens Falls and Home to defend the class action and to pay damages. After Glens Falls and Home filed motions for summary judgment, the trial court ruled that neither company had a duty to defend or pay damages on behalf of the State in connection with the class action claims. The State now appeals from that judgment. The duty of Travelers to defend or pay damages is not at issue in the appeal.

Robert K. Corbin, Atty. Gen. by J. Michael Low, Asst. Atty. Gen., Phoenix, for appellant.

Robbins, Green, O'Grady & Abbuhl, P.A. by Robert H. Green, J. Kenneth Mangum, Phoenix, for appellee Glens Falls Ins. Co.

Holman & Meador by John F. Holman, Phoenix, for appellee The Home Indem. Co.

## OPINION

FROEB, Presiding Judge.

This appeal involves a question of liability insurance coverage. The matter to be decided is when damage occurred within the meaning of the insurance policies involved.

Lincoln Thrift Association was incorporated April 18, 1967, and U. S. Thrift Association was incorporated on December 15, 1969. An affidavit in the record states the liabilities of Lincoln Thrift Association exceeded its assets continuously from September 30, 1969, and the liabilities of U. S.

1. Thrift associations were corporations authorized under Arizona law (former A.R.S. § 44–2041) to receive money from the public, issue investment certificates in return therefor and loan such money. The statute authorizing their existence has been repealed. Laws 1976, Ch. 114, § 2 eff. June 24, 1976. For the purposes of this opinion, the plaintiffs in the class action suit are referred to as depositors for simplicity, but in doing so, we intend no legal definition of the relationship between the plaintiffs and the thrift associations.

Thrift Association exceeded its assets continuously from December 31, 1971. On November 28, 1975, both Lincoln Thrift Association and U. S. Thrift Association were ordered into federal receivership.

The Glens Falls policy provided coverage to the State from July 1, 1967, to July 1, 1968. The Home policy covered from July 1, 1968, to July 1, 1971. The relevant covering language of the policies is set forth in the footnote.[2]

The trial court ruled that the liability, if any, of the insurers arose when damage occurred to the depositors and that this damage did not occur until November 28, 1975, when the thrift associations were placed into federal receivership. For reasons hereafter set forth, we agree.

The State presents the following issues:

1. Did the superior court err in granting the insurer/appellees' motions for summary judgment because it concluded as a matter of law that the depositors in Lincoln and U. S. Thrift Associations were not damaged, within the meaning of certain insurance policies, until the date, November 28, 1975, the federal receivership order was entered, notwithstanding the Associations long and continuous history of being insolvent and of sustaining operating losses?

2. Is there reasonable evidence in the record to support the conclusion that prior to November 28, 1975, all depositors in Lincoln and U. S. Thrift Associations could have withdrawn the full amount of their deposits, together with any interest accruing thereon, and that the Associations had the financial capability to honor such requests in full?

The State concedes that the controlling inquiry with respect to whether an "occurrence" or "accident" falls within the coverage of the policies is the time of the actual damage to the complaining party and not the time of the wrongful act. *See Century Mutual Insurance Co. v. Southern Arizona Aviation, Inc.*, 8 Ariz.App. 384, 446 P.2d 490 (1968); *annot.*, Occurrence of accident or injury as during, or before or after, time period of coverage of liability policy. 57 A.L.R.2d 1385.

The main argument of the State is that the damage arose when the liabilities of the thrift associations first exceeded their assets. At that point, the State argues, the depositors were damaged because irrespective of the amount of the deficit, it would have been financially impossible for the depositors to withdraw the full amounts of their deposits together with accrued interest.

The insurers argue that while insolvency of the thrift associations may have preceded the order placing them into receivership, even for a lengthy and continuous period of time, that fact alone is not damage to the depositors within the meaning of the insurance policies. They argue that damage in this setting arose only when it became impossible for depositors to withdraw their funds by reason of the order placing the associations into receivership.

The key to the resolution of this issue is the difference between actual damage and potential damage. We hold that until a depositor was actually unable to withdraw funds, there was no loss sustained which would constitute damage under the insurance policies. Even assuming continuing

---

**2.** The Glens Falls policy provided, in part:

    IV. Policy Period, Territory: This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

    \*    \*    \*    \*    \*    \*

    "Occurrence" means an event, or continuous or repeated exposure to conditions, which unexpectedly causes injury during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence.

The Home Indemnity policy provided, in part:

    IV. Policy Period; Territory

    This insurance applies only to bodily injury or property damage which occurs during the policy period within the territory described in paragraph (1) or (2) of the definition of policy territory.

    \*    \*    \*    \*    \*    \*

    "[O]ccurrence" means an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

insolvency, there is no evidence in the record of these summary judgment proceedings that any depositor was unable to withdraw funds prior to receivership. The record does not show that a depositor could not have withdrawn funds even though from an accounting standpoint the thrift associations were insolvent. It is unnecessary to elaborate upon the many instances where companies continue to do business notwithstanding the fact that their liabilities exceed their assets. We do not say that there were no *potential* losses to depositors during the period of insolvency. However, for the purposes of pinpointing the occurrence of damage under insurance policies, *potential* damage will not suffice. It is only *actual* damage which will give rise to liability under the policies.

The State argues that we must view the question not from the standpoint of a single depositor but from the standpoint of all depositors. It contends that it would have been financially impossible for all depositors to withdraw their funds because of the continuing insolvency of the thrift associations. While this might be correct, it is hypothetical. As such, it speculates upon facts that did not occur and therefore refers only to potential, not actual, damage. The actual damage for purposes of insurance coverage occurred when the thrift associations were ordered into receivership. At that point withdrawal of deposits was impossible.

We are referred to no cases as precedent on this issue and it thus appears to be one of first impression. The State refers us to *Gruol Construction Co. v. Insurance Company of North America*, 11 Wash.App. 632, 524 P.2d 427 (1974), and *Export S.S. Corp. v. American Insurance Co.*, 106 F.2d 9 (2d Cir. 1939) as supporting its position, but neither is applicable. *Gruol* involved damage to a building caused by dry rot allegedly due to negligent backfilling of dirt. Different insurance carriers provided liability coverage during the years from the time of the backfilling to the discovery of the damage. *Export S.S. Corp.* involved a claim over a cargo of tobacco which was damaged during a voyage of one of the company's ships. Here again, different insurance carriers were involved at different times. In both cases the court was required to decide when the damage occurred. Neither case is applicable here because the cited cases involved *actual* damage which was progressive and continuous. They do not concern themselves with the difference between actual and potential damage, as we must in this case.

The foregoing resolves the controlling issue in the case. The parties, in addition, present argument concerning the propriety of an affidavit submitted to the court by the State for the first time in its motion for new trial and for rehearing. The affidavit was submitted by a certified public accountant who performed audit work upon the thrift associations for the federal receiver. The gist of the affidavit is that the liabilities of the associations exceeded their assets continuously from certain dates. We need not decide if the affidavit was properly submitted to the court for consideration because, even if it is considered, the insurers prevail on their appeal for the reasons previously set forth.

The judgments in favor of appellees Glens Falls Insurance Company and The Home Indemnity Company are affirmed.

DONOFRIO and EUBANK, JJ., concur.