**WRECKING CORPORATION OF AMERICA, VIRGINIA, INC.,**
Appellant,

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

No. 88–754.

District of Columbia Court of Appeals.

Submitted April 16, 1990.
Decided May 16, 1990.

Louis Fireison and Daniel J. Blum, Bethesda, Md., were on the brief, for appellant.

Frank J. Martell, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and REILLY, Senior Judge.

ROGERS, Chief Judge:

Appellant, Wrecking Corporation of America, Virginia, Inc. (WCA), appeals from the grant of summary judgment to appellee, Insurance Company of North America (INA), on the ground that the trial judge erred in ruling that INA had no duty to defend WCA since the property damage (the compensable occurrence under the insurance policy) occurred after the policy had been cancelled. Appellant contends that the policy was an occurrence policy and hence covered property damage as a result of alleged negligence during the period the policy was in effect. We affirm.[1]

I

In March 1979, WCA, a demolition subcontractor, began doing demolition work at the Papermill Project and completed its work on August 12, 1979. A portion of a wall on which WCA had worked collapsed in October 1979. WCA had obtained a general liability policy from INA covering WCA for property damage (other than caused by blasting) at the site. The policy provided that "property damage" is

> physical injury to or destruction of tangible property which occurs during the policy period, including the loss thereof at any time resulting therefrom....

The policy defined "occurrence" to mean an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The policy was in effect from March 1, 1979, until August 27, 1979, when it was cancelled at the request of WCA.

INA also insured the contractor at the Papermill Project for all of the damage caused by the collapse of the wall. Having paid the contractor's claim, INA sought subrogation against WCA alleging that the collapse of the wall was due solely to WCA's negligence. WCA notified INA of the claim and requested that INA appoint an attorney to defend it. INA refused because, although it agreed that the insurance policy was in effect while WCA worked at the project, the collapse and the property damage occurred after the insurance policy was cancelled.

WCA filed for a declaratory judgment that INA should have provided a defense for it and cross motions for summary judgment were filed. The judge granted INA's motion. WCA appealed and the case was remanded to the trial court with instructions to rule on the motion in light of the entire insurance policy. *Wrecking Corporation of America, Virginia Inc. v. Insurance Company of America*, No. 86–18 (D.C. May 5, 1987) (unpublished order). On remand, the trial judge granted INA's motion on the ground that the insurance policy limited the insurer's liability to compensation for property damage occurring during the policy period and the damage that was the subject of the litigation occurred in October 1979 after the policy had been terminated; in other words, the compensable occurrence did not take place when the damage-causing activity was performed but when the resulting damage occurred.

II

On appeal WCA contends that the damage at Papermill Project was caused by a

---

1. Our review of the grant of summary judgment motion is de novo. *Holland v. Hannan*, 456 A.2d 807 (D.C.1983); *Burch v. Amsterdam Corp.*, 366 A.2d 1079 (D.C.1976).

*process* set in motion by appellant's actions, rather than by a single act. There are several problems with this contention.

██ First, the prevailing rule is that "property damage occurs" at the time the damage is discovered or when it has manifested itself. *See, e.g., Aetna Casualty & Surety Co. v. PPG Industries, Inc.,* 554 F.Supp. 290, 294 (D.Ariz.1983) ("It appears well settled that where a policy insures against an 'occurrence,' rather than an 'accident,' coverage is based not upon the time when the wrongful act was committed but at the time the damage was discovered.") (citations from New York, Indiana and California omitted); *American Motorists Ins. Co. v. E.R. Squibb & Sons, Inc.,* 95 Misc.2d 222, 406 N.Y.S.2d 658 (1978) (policy's definition of occurrence—"[a]n accident or injurious exposure to conditions which results, during the policy period, in bodily injury or property damage"—is identical to that in Standard Comprehensive Liability Policy promulgated in 1966 by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau in an effort to resolve whether previously used word, "accident," refers to the act or the injury resulting from the act; coverage turns on the results and not the act); Annotation, *Events As Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies,* 37 A.L.R. 4th 382, 395 (1985) (cases holding that where there is an occurrence liability policy, the event triggering liability of insurer to defend is "the sustaining of actual damage by the complaining party, rather than the negligent act or omission which causes the damage").

██ Second, a limited exception exists where the damage can be characterized as being "continuous or progressive." *E.g., California Union Ins. Co. v. Landmark Ins. Co.,* 145 Cal.App.3d 462, 476, 193 Cal. Rptr. 461, 469 (1983) (swimming pool pipe leak causing erosion and, eventually, the progressive saturation of adjoining landfill

slopes). In these situations the initial damage occurred, *i.e.,* was evident, during the policy period and further damage occurred afterward. 193 Cal.Rptr. at 469 (citing *United States Fidelity & Guaranty Co. v. American Insurance Co.,* 169 Ind.App. 1, 345 N.E.2d 267, 271 (1976)). The record is void of any allegation by WCA that the property damage is of a "continuous or progressive" nature or that initial damage occurred during the policy period.[2] *Holland v. Hannan, supra* note 1, 456 A.2d 807 (burden on a motion for summary judgment to demonstrate entitlement to a favorable determination under applicable principles of substantive law); *Burch v. Amsterdam, supra* note 1, 366 A.2d 1079 (same); *see also Miller v. American Coalition of Citizens With Disabilities, Inc.,* 485 A.2d 186 (D.C.1984) (moving party's allegations must be countered with specificity); *Nader v. de Toledano,* 408 A.2d 31 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) (movant may discharge burden by demonstrating opponent cannot produce contrary evidence). WCA maintained in the trial court, and in its brief on appeal, that since INA alleged WCA's negligence caused the wall to collapse, the negligence had to have occurred while the policy was in effect. As a non sequitur, WCA maintains that the damage/injury must have occurred during the policy period. Further, on appeal WCA maintains that "the allegations in the pleadings [are that] WCA negligently removed all structural support from an exterior wall and that as of that moment a process began that ultimately resulted in the collapse of the wall." However, it failed to allege any factual basis for that claim in opposition to INA's motion for summary judgment. *See Turner v. American Motors Gen. Corp.,* 392 A.2d 1005 (D.C.1978) (court on appeal of motion for summary judgment will consider pleadings, depositions and admissions on file, together

---

**2.** WCA first contended that the "occurrence" took place when the negligent process began, rather than when the damage occurred, in its memorandum of points and authorities in oppo-

sition to its [renewed] motion for summary judgment and its [renewed] cross motion for summary judgment, but never alleged specific facts to support this argument.

with any affidavits).[3]

As the trial judge noted, the court has previously held that "there is nothing [in the legal nature of the duty to defend] that requires that the duty to defend be larger than the scope of the policy." *S. Freedman & Sons v. Hartford Fire Ins. Co.*, 396 A.2d 195, 197 (D.C.1978). WCA failed to allege specific facts to bring the property damage within the policy period. *See* Appleman, *Insurance Law and Practice*, § 4685.01 at 138 (Berdal ed. 1979) ("an accident that occurs after the expiration of the policy period is excluded despite the fact that the activity involving the insured might have occurred during the policy period."); *see* Couch, *On Insurance*, § 39.203 (2d ed. 1985) (insurer not liable for loss sustained by the insured after the period of time during which insured is covered). The basic flaw in WCA's argument is that while the duty to defend is defined by the complaint, *Boyle v. National Cas. Co.*, 84 A.2d 614, 615–16 (D.C.1951) and while ambiguous language in insurance contracts is generally construed in favor of the insured, *Meade v. Prudential Ins. Co. of America*, 477 A.2d 726 (D.C.1984), the policy at issue in the instant case defines what occurrences are covered and WCA has failed to bring itself within the narrow exception to the general rule. Here, the policy is limited to damage occurring while the policy is in effect. Hence, the trial judge could properly grant summary judgment to INA on the basis that the property damage at Papermill "occurred" when the damage manifested itself, in October 1979, which is consistent with the general rule. *Aetna Casualty & Surety Co. v. PPG Industries, Inc.*, *supra*, 554 F.Supp. at 294. Accordingly, we affirm.

---

**3.** WCA analogizes this case to *Kissel v. Aetna Casualty & Surety Co.*, 380 S.W.2d 497 (Mo. 1964), in which the claim involved allegedly negligent excavation work where the land initially shifted during the policy period but caused significant damage after the policy had terminated, 380 S.W.2d at 509, and *Travelers v. Humming Bird Coal Co.*, 371 S.W.2d 35 (Ky. 1963), in which the claim was for damages caused by a landslide where the ground again began to shift during the policy period and continued to do so for years after the policy ended until it overran neighboring property, 371 S.W.2d at 38. These cases are distinguishable, however, because they involve damage that was caused by an accident that can be characterized as a continuing process, rather than a single act, in which some part of the damaging effects occurred during the policy period. In *Kissel*, the court noted that there was sufficient evidence to show that the process had started during the term of the policy, 380 S.W.2d at 509, something absent here.

WCA also relies on cases where insureds developed diseases which were linked to exposure or accidents that occurred during the policy period but did not manifest until after the policy expired. *E.g., Lac D'Amiante Du Quebec v. American Home Assurance Co.*, 613 F.Supp. 1549 (D.N.J.1985); *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir.), *reh'g denied*, 758 F.2d 651 (1985). These cases also are distinguishable. Not only are they an exception to the general rule, but their rationale is based on the difficulty of determining when the injury occurred and are justified on the theory that the bodily injury or damage is not traceable to a distinct act or occurrence but rather to continuous exposure causing progressive deterioration of body tissue or a continuous deterioration after initial exposure. *See, e.g., Ducre v. Executive Officers of Halter Marine, Inc., supra*, 752 F.2d at 991.