FIRST SOUTHERN INSURANCE
COMPANY, Appellant,

v.

JIM LYNCH ENTERPRISES, INC.;
James R. Lynch; Daniel
Norath, Appellees.

No. 90–1102.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 9, 1990.

Decided May 3, 1991.

Thomas J. Plunkert, St. Louis, Mo., for appellant.

Andrew Rothschild, St. Louis, Mo., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and STUART,* Senior District Judge.

---

* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

McMILLIAN, Circuit Judge.

First Southern Insurance Company ("First Southern") appeals from a final judgment entered in the United States District Court for the Eastern District of Missouri, granting partial summary judgment in favor of Jim Lynch Enterprises, Inc. ("Lynch Enterprises"), James R. Lynch, and Daniel Norath on the issue of the duty to defend. For reversal, First Southern argues that the district court erred in determining that the breach of contract claim of the underlying suit was arguably within the policy coverage. For the reasons discussed below, we reverse the judgment of the district court.

## I.

On April 24, 1989, First Southern filed an amended complaint for declaratory judgment in the United States District Court for the Eastern District of Missouri against its insureds, Lynch Enterprises and James R. Lynch (hereinafter collectively referred to as "Lynch"), and against Daniel Norath, a former employee of Lynch. First Southern sought a declaration that it was not obligated to defend or indemnify Lynch in a pending lawsuit filed by Norath in the Circuit Court of St. Louis County ("Norath suit").

The Norath suit arises out of the termination of Norath by Lynch and a subsequent dispute over a Stock Purchase Agreement. The agreement provided for a redemption of Norath's stock in Lynch Enterprises upon his termination of employment. Lynch has not redeemed the stock, and in 1988, Norath brought suit under three counts to recover under the agreement. Count I seeks damages for breach of the agreement, Count II alleges that Lynch made misrepresentations with respect to the value of the stock, and Count III claims that Lynch made misrepresentations to induce Norath to move to California. First Southern has provided Lynch with a defense under a reservation of right to contest coverage.

Lynch claims that First Southern is obligated to defend and indemnify it in the Norath suit under two successive policies of liability insurance, the later of which is entitled Employee Benefits Liability Coverage. It provides, in pertinent part:

[First Southern] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of and arising out of any negligent act, error or omission in the administration of the Named Insured's employee benefit programs. [First Southern] shall have the right and duty to defend any suit against the Insured seeking damages for such negligent acts, errors or omissions, even if any of the allegations of the suit are groundless, false or fraudulent.

Joint Appendix at 39W. The policy explicitly excludes "any dishonest, fraudulent, or criminal act." *Id.*

First Southern and Lynch each filed motions for summary judgment. On December 11, 1989, the district court granted summary judgment in favor of Lynch, declaring that First Southern had a duty to defend Lynch against the claims of Norath. The district court specifically held that "liability under Norath's Count I is potentially within the coverage of the policy, as Lynch Enterprise's breaching acts and omissions may have been committed negligently." *First Southern Insurance Co. v. Jim Lynch Enterprises, Inc.*, No. 88–2353C(1), slip op. at 4 (E.D.Mo. Dec. 12, 1989) (footnote omitted). The district court also dismissed First Southern's amended complaint as premature to the extent it seeks declaratory judgment concerning the issue of indemnification. This appeal followed.

## II.

The sole issue on appeal is whether the district court erred in holding that First Southern was obligated to defend Lynch under the Employee Benefits Liability Coverage policy. Summary judgment is appropriate when the district court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In this diversity case, we review the district court's conclusions of law, including the granting of summary judgment, under the de novo standard. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). In addition, we note that the interpretation and construction of insurance policies is a matter of law, *Huffstutter v. Michigan Mutual Insurance Co.,* 778 S.W.2d 391, 393 (Mo.Ct.App. 1989), and therefore, issues involving the duty to defend are particularly amenable to summary judgment. *See, e.g., John Deere Insurance Co. v. Shamrock Industries, Inc.,* 929 F.2d 413, 415 (8th Cir.1991).

First Southern argues that it has no duty to defend Lynch because the Norath suit is essentially a breach of contract action that is not predicated on any negligence. Although First Southern concedes policy coverage for errors and omissions within an action for breach of contract, it claims that such coverage is limited to situations involving a breach of a duty to perform some act, not the duty to pay money. First Southern also maintains that it is irrelevant whether Lynch's failure to pay the money owed under the Stock Purchase Agreement was intentional or negligent. We agree.

█ In Missouri, "[t]he standard for determining whether an insurer owes a duty to defend is based on a comparison of the language of the policy with the allegations of the plaintiff's complaint, and where those allegations state a claim which is *potentially* or *arguably* within the policy's coverage, then the insurer must defend the suit." *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.,* 740 F.2d 647, 652 (8th Cir.1984) (emphasis in original) (Missouri law). Under Missouri law, the duty to defend is broader than the duty to indemnify. *Howard v. Russell Stover*

*Candies, Inc.,* 649 F.2d 620, 623 (8th Cir. 1981) (Missouri law). Finally, we note that, as a general rule, exceptions and limitations contained in insurance policies should be strictly construed against the insurer, and ambiguities are to be resolved in favor of the insured. *Duncan v. Ray,* 768 S.W.2d 667, 669 (Mo.Ct.App.1989). Therefore, if there are any valid differences of opinion as to the interpretation of an insurance policy, or the coverage thereunder, the insured must be given the benefit of the doubt.

█ Lynch argues that Norath alleges acts and omissions in his breach of contract claim that "may potentially or arguably have been committed negligently." Count I of Norath's petition alleges, in essence, that Lynch "failed to pay [Norath] the money owed under the Stock Purchase Agreement," "failed to have the value determined in the manner and by the person and at the time agreed upon between the parties," and "has taken actions to artificially deflate the value of the stock."[1] Joint Appendix at 39C–39D. While we acknowledge that the duty to defend is determined by the nature of the factual assertions in a complaint, and not the label used by the plaintiff, we find nothing in these allegations that is "arguably" or "potentially" within the policy terms of the Employee Benefits Liability Coverage, which limits coverage to "any negligent act, error or omission" in the administration of the employee benefit programs.

In addition, Lynch's reliance on *American Mortgage Investment Co. v. Hardin–Stockton Corp.,* 671 S.W.2d 283 (Mo.Ct. App.1984) (*American Mortgage*), is misplaced. Although the Missouri Court of Appeals stated in that case that an "act or omission which breaches a contract may

---

**1.** The petition includes nine specific allegations in support of the claim that Lynch artificially deflated the value of its stock: (1) Lynch Enterprises "overpaid Jim Lynch for his stock in the two predecessor companies"; (2) it "allowed Jim Lynch to refuse to refinance or retire the principal on [a] note, in order to maximize his personal income"; (3) it "borrowed money from Jim Lynch, when the corporation had no business purpose for doing so"; (4) it "paid Jim Lynch an excessive salary, bonus and benefits";

(5) it "continued to lend money to Jim Lynch and to members of his family"; (6) it "allowed Jim Lynch to usurp a business opportunity to himself"; (7) it "sold automobiles at distressed prices in order to pay Jim Lynch bonuses"; (8) it "paid Jim Lynch's personal attorney's fees and accounting fees out of corporation assets"; and (9) it "furnished cars and insurance for Jim Lynch's female acquaintance, ex-wife and children's benefit." Joint Appendix at 39C–39D.

also be a negligent act which would give rise to a liability in tort," it also noted that, in determining the character of a cause of action, " 'it is necessary to ascertain the source of the duty claimed to have been violated.' " *Id.* at 293 (quoting *State ex rel. Cummins Missouri Diesel Sales Corp. v. Eversole,* 332 S.W.2d 53, 57 (Mo.Ct.App. 1960) (*Eversole* )). Moreover, the *American Mortgage* court stated:

> [I]f the duty claimed is one arising solely from or imposed only by the contract, then the action lies in contract. "On the other hand, if a party sues for breach of duty prescribed by law as an incident of the relation or status which the parties have created by their agreement, the action may be one in tort, even though the breach of duty may also be a violation of the terms of the contract."

671 S.W.2d at 293 (quoting *Eversole,* 332 S.W.2d at 58).

■ Count I of Norath's petition explicitly cites the Stock Purchase Agreement as the source of the duty alleged to have been violated. There is no reasonable interpretation of the allegations in Count I that would support a characterization of this count as an action in tort. Norath's cause of action clearly lies in contract.

We believe this case is similar to *Cincinnati Insurance Co. v. Metropolitan Properties, Inc.,* 806 F.2d 1541 (11th Cir.1986). In that case, the Eleventh Circuit affirmed summary judgment in favor of the insurer based, in part, on the district court's finding that the insurer had no duty to defend or indemnify two breach of contract claims under policy coverage for negligent acts, errors or omissions. *Id.* at 1544. The Eleventh Circuit rejected the appellant's claim that the breach of contract allegations were arguably predicated on negligent acts, stating that "the word 'negligent' as used in the policy should be interpreted in legal terms." *Id.* After reviewing the traditional elements of negligence,[2] the Eleventh Circuit stated that "if appel-

lant has breached any duty, it is one created by contract, not by law." *Id.* We reach the same conclusion in the instant case.

■ We also reject Lynch's argument that Counts II and III of the Norath petition are arguably within the policy coverage because Norath could submit these claims on a theory of negligent misrepresentation. Count II alleges, in pertinent part, that Lynch misrepresented Norath's entitlement under the Stock Purchase Agreement, as well as the method by which the "book value" was to be computed, and that Lynch made these representations "with the *intent* to induce [Norath] to sign the Employment Agreement and the Stock Purchase Agreement." Joint Appendix at 39E (emphasis added). Count III essentially claims that Lynch induced Norath to move to California by representing that the transfer was a result of growing business operations, when Lynch actually intended to fire him, and that Lynch misrepresented the value of Norath's stock entitlement at the time of the transfer. *Id.* at 39G. Count III also alleges that these misrepresentations were made "with the *intent* to induce [Norath] to remain in the employ of [Lynch]." *Id.* (emphasis added).

There is no reasonable interpretation of Norath's pleadings in Counts II and III that would support a conclusion that the allegations could "arguably or potentially" be submitted under a theory of negligent misrepresentation. This is especially true, given the allegation, in both Counts II and III, that "[Lynch's] actions were done with malice, through the intentional doing of wrongful acts without just cause or excuse." *Id.* at 39F & 39H. The petition clearly alleges fraud, which is explicitly excluded from the policy coverage.

### III.

In sum, we hold that First Southern has no duty to defend Lynch in the Norath suit.

---

**2.** These include: "(1) a legal duty requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure to adhere to this reasonableness standard; (3) a causal connec-

tion between the conduct and the injury; and (4) actual loss or damage." *Cincinnati Ins. Co. v. Metropolitan Properties, Inc.,* 806 F.2d 1541, 1544 (11th Cir.1986) (citing W. Prosser, Handbook of the Law of Torts 143 (4th ed. 1971)).

Accordingly, we reverse the judgment of the district court.