**BAYLOR HEATING & AIR CONDITIONING, INC.,**
Plaintiff–Appellant,

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 91–3826.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1992.

Decided March 1, 1993.

Arthur D. Rutkowski (argued), David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, IN, for plaintiff-appellant.

Danny E. Glass (argued), Thomas H. Bryan, Fine & Hatfield, Evansville, IN, for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This case takes place at the intersection of labor relations and insurance law. For almost three years, Baylor Heating & Air Conditioning, Inc. (Baylor) and the Sheet Metal Workers International Association, Local No. 20 (the Union) were parties to a collective bargaining agreement. The agreement obligated Baylor to make certain payments to an employee pension fund. In January 1987, Baylor informed the Union that it did not intend to renew the agreement when it expired, according to its terms, on April 30, 1987. Believing that it was free of all obligations under the agreement, and acting upon the advice of its counsel, William Michael Schiff, Baylor ceased making payments to the pension fund on May 1, 1987.

On July 23, 1987, The Sheet Metal Workers National Benefit Fund (the Fund) notified Baylor that its failure to make pension fund payments violated the collective bargaining agreement. The Fund demanded payment and threatened litigation if it were not forthcoming. Baylor denied liability, and the Fund brought suit against Baylor for delinquent payments on October 19, 1988. That suit was voluntarily dismissed until Baylor's liability under the collective bargaining agreement could be fully litigated in a separate proceeding.[1] The Fund

---

1. After Baylor informed the Union that it did not intend to renew the collective bargaining agreement, the Union filed unfair labor charges with the National Labor Relations Board (NLRB). On April 14, 1987, the Acting Regional Director of the NLRB found that Baylor had not committed an unfair labor practice. In May 1987, the union invoked the bargaining agreement's interest arbitration clause and submitted the dispute to the National Joint Adjustment Board for the Sheet Metal Industry (NJAB). On June 24, 1987, the NJAB decided in favor of the Union and ordered Baylor to execute a four-year agreement effective June 1, 1987, through June 30, 1991, incorporating the same terms and conditions as the recently expired agreement. The United States District Court for the Southern District of Indiana enforced this arbitration award and this court affirmed. *Sheet Metal Workers Local 20 v. Baylor Heating,* 688

refiled its suit for payment on June 8, 1990. We took judicial notice that judgment had been entered in that suit against Baylor in the amount of $93,130.68, representing Baylor's liability to the Fund under the collective bargaining agreement. *Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Ins. Co.*, 987 F.2d 415 (7th Cir.1992).

The present case arises from Baylor's claim that the judgment in favor of the Fund constitutes an insured loss covered by its commercial general liability insurance. Federated Mutual Insurance Company (Federated) first issued the policy in question to Baylor on June 14, 1988. The policy included a multi-cover liability endorsement providing in pertinent part:

We will pay on your behalf all sums which you become legally obligated to pay as damages arising out of any claim made by:

(1) any employee or former employee; or

(2) the beneficiaries or legal representatives thereof; for injury or damage caused by any negligent act, error or omission in the "administration" of your "employee benefit programs" by:

(a) you; or

(b) any other person for whose acts, errors or omissions you are legally liable.[2]

Baylor contended that the judgment in favor of the Union represents damages arising out of the negligent administration of its employee benefits plan and is thus covered by the endorsement to its commercial liability insurance policy. Federated denied coverage and Baylor filed suit in the United States District Court for the Southern District of Indiana seeking monetary and declaratory relief. The district court held that the policy does not cover Baylor's claim because it was not in effect when the event giving rise to the liability occurred nor when the claim for damages resulting

from that occurrence was made. *Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.*, No. 90–73–C (S.D.Ind. Nov. 14, 1991). Baylor appealed. Applying Indiana law, we now affirm.

## I.

It is a simple axiom of insurance law that "a risk covered by a policy of liability insurance is not covered if it occurs either before or after the period of coverage under the policy." 11 George J. Couch, *Cyclopedia of Insurance Law* § 44:8 (M. Rhodes rev. 2d ed. 1982). Insurance policies are, with respect to the event triggering coverage, generally divided into two categories: (1) "occurrence" policies, which provide coverage if the event insured against (the "occurrence") takes place within the policy period; and (2) "claims made" policies, which provide coverage only if a claim arising from an insured hazard is made against the insured during the policy period. Richard C. Tinney, Annotation, *Event as Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies*, 37 A.L.R.4th 382, 390 (1985). We agree with Federated that the policy at issue here is of the occurrence variety, but disagree with its assertion that the event insured against occurred outside of the policy period.

Several factors indicate that Baylor purchased an occurrence-type policy. The first page of Baylor's policy is captioned: "Commercial General Liability Coverage Part (*Occurrence* Form CG 00 01)." Appellee's App. at 36 (emphasis supplied). Section I of the policy itself, denominated "coverages," provides: "This insurance applies only to 'bodily injury' and 'property damage' which occurs during the policy period. The 'bodily injury' or 'property damage' must be caused by an 'occurrence.'" We give this language its plain and ordinary meaning, *Eli Lily & Co. v. Home Ins. Co.*, 482 N.E.2d 467 (Ind.1985),

F.Supp. 462 (S.D.Ind.1988), *aff'd,* 877 F.2d 547 (7th Cir.1989).

**2.** The policy was renewed in July 1989. The second policy was identical in all material aspects, except that in the first portion of the

employee benefit liability section of the multi-cover liability endorsement the phrase "arising out of any claim made by" was deleted and replaced with the word "to."

and conclude that Baylor's policy covers only events occurring within the policy period.[3]

We must next determine when the alleged coverage-triggering event occurred. Coverage under an occurrence policy is activated when the insured sustains actual damage, irrespective of when the negligent act or omission that caused the damage occurred. *United States Fidelity & Guar. Co. v. American Ins. Co.*, 169 Ind.App. 1, 345 N.E.2d 267, 270 (1976). *See also George W. Deer & Son v. Employers Indem. Corp.*, 77 F.2d 175 (7th Cir.1935) (applying Indiana law).[4] Here the allegedly negligent omission occurred on May 1, 1987, and continued each month thereafter while Baylor failed to make payments to the employee pension fund. It does not necessarily follow, however, that Baylor sustained actual damage at that time. Indeed, until this court held on June 13, 1989, that Baylor was bound by the terms of the collective bargaining agreement pursuant to the National Joint Adjustment Board's arbitration award, Baylor's liability to the pension fund was merely potential. After our decision in *Sheet Metal Workers Local 20 v. Baylor Heating*, Baylor's liability to the pension fund, and hence its damage, became fixed and actual.[5] Consequently, the insured event occurred while the policy was in effect.

We have been referred to no cases directly on point, and this appears to be a case of first impression. The situation here, however, is somewhat analogous to that presented in certain other cases. For example, in *State v. Glen Falls Ins. Co.*, 125 Ariz. 328, 609 P.2d 598 (App.Div. 1 1980), the court held that coverage under an occurrence policy guaranteeing deposits in a failed savings and loan was not activated until the savings institution was placed in receivership and depositors were prohibited from withdrawing funds. The court stated: "[U]ntil a depositor was actually unable to withdraw funds, there was no loss sustained which would constitute damage under the insurance policies. . . . The actual damage for purposes of insurance coverage occurred when the thrift associations were ordered into receivership. At that point withdrawal of deposits was impossible." *Id.* at 600–01. Similarly here, no matter how likely it was that Baylor would have to make payments with respect to

3. Baylor argues that the endorsement to the policy issued in July 1989, removes it from the usual occurrence-claims made dichotomy. Appellant's Br. at 15. We must construe the policy in its entirety so as to render effective all of its provisions. *American Mut. Liab. Ins. Co. v. Dusenberg*, 214 Ind. 488, 14 N.E.2d 919 (1938). Baylor's proposed construction is unpersuasive because it would effectively negate the clear "occurrence" language in the primary policy.

Baylor argues alternatively that the endorsement to the policy issued in June 1988, creates a claims made policy at least as to coverage for employee benefit liability. Appellant's Br. at 22. Specifically, Baylor contends that the provision beginning "[w]e will pay on your behalf all sums which you become legally obligated to pay as damages arising out of a claim" extends coverage for employee benefit liability to any claim made while the policy is in effect. Although this argument has some force, it again ignores the language in the policy itself that clearly provides for occurrence-based coverage. All insurance policies contemplate third parties making claims against the insured, and here the word "claim" seems merely to identify the type of liability covered by the endorsement. Reading the endorsement together with the policy itself, and giving effect to every provision in

both, we conclude that the quoted language in the endorsement merely describes the type of obligations covered while the policy itself defines the duration of this coverage.

4. Federated cites *George W. Deer & Son*, 77 F.2d 175 (7th Cir.1935), for the following proposition: "An occurrence policy is a policy in which coverage is effective when the negligent or omitted act occurs within the policy period. Stated differently, no liability exists if the accident or injury occurs outside the time period of coverage." Appellee's Br. at 18. This misinterprets our opinion in that case. The insurer had argued that even though an explosion occurred while the policy was in effect, there was no coverage because the allegedly negligent act that caused the explosion occurred before the policy was issued. We rejected this contention and held that the policy's coverage of "damages ... from *accidents or errors* occurring while [the] policy is in force" was triggered when actual damage was sustained, i.e., when the explosion occurred. 77 F.2d at 176 & n. 1.

5. Our decision was of course subject to possible review in the United States Supreme Court, but our research discloses that Baylor did not petition the Court for a writ of certiorari.

pensions after the original collective bargaining agreement expired on April 30, 1987, before our decision of June 13, 1989, Baylor's liability was only potential. After that date, its liability was fixed and its damage actual.

In *Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F.Supp. 1231 (M.D.Fla.1974), the court considered the coverage of an occurrence-type policy that provided indemnification for liabilities arising from personal injuries caused by the insured, including malicious prosecutions. The insured argued that he was entitled to indemnification for liability because the claim against him accrued only when the maliciously prosecuted action was terminated in favor of the plaintiff, an event that occurred after the policy was issued. The parties agreed that such favorable termination was an essential element of the tort of malicious prosecution under the applicable state law. *Id.* at 1233. The court agreed with the insured stating:

> [A] cause of action for the tort of malicious prosecution ... does not arise ... until all of the essential elements of the tort have materialized.... Thus ... the date of favorable termination (rather [than] the commencement) of the malicious action ... was the operative occurrence upon which the effectiveness of the policy stands or falls.

*Id.* at 1235. *But see Muller Fuel Oil Co. v. Insurance Co. of N. America*, 95 N.J.Super. 564, 232 A.2d 168 (1967) (holding that coverage was determined as of the date the maliciously prosecuted action was commenced). Similarly, our decision of June 13, 1989, was the last essential precursor to Baylor's liability, and it was only then that it sustained actual damage.

We thus conclude that the alleged coverage-triggering event occurred on June 13,

1989, the date Baylor's contested liability was resolved in favor of the pension fund. Because this event occurred while the policy was in effect, we must now determine whether Baylor's failure to pay the pension fund contributions in question was a "negligent act, error or omission" within the policy's substantive coverage.

## II.

 The multi-cover liability endorsement does not provide coverage for all sums which Baylor must pay to the Fund but only those arising from a "negligent act, error, or omission." Baylor contends that it "did not set out purposely to avoid [its] contractual obligations." Appellant's Br. at 30. Although this may be true, it misses the point. Our inquiry is not directed toward Baylor's motives. Indeed, we need not decide whether Baylor acted in good faith when it terminated the collective bargaining agreement and ceased to make the related pension fund payments, believing such actions consistent with its employees' wishes. In addition, it is irrelevant that Baylor acted pursuant to Schiff's advice. Although Schiff may have been mistaken, or even negligent (thus raising the possibility of a malpractice action against him), this does not convert Baylor's intentional act in refusing to further honor the collective bargaining agreement into a negligent one.[6]

Baylor's liability to the pension fund is contractual. Although at the time Baylor refused to make fund payments it did not believe it had any contractual obligation to do so, these beliefs do not change the contractual nature of the obligation. The Fund was awarded amounts owed pursuant to the collective bargaining agreement, not

---

6. We note that we are not reviewing the propriety of Schiff's actions. Moreover, it is certainly not clear that Schiff was negligent. He clearly was incorrect, as our decision in *Sheet Metal Local Union No. 20 v. Baylor*, 877 F.2d 547 (7th Cir.1989) confirmed. But this does not mean he was negligent. Advocating a legal position that is not ultimately vindicated in litigation is not per se unreasonable, the touchstone of negligence. If it were, fifty percent of all attorneys engaged in litigation would be negligent since, in the nature of things, one-half of all attorneys lose their cases in court. Whatever the quality of Schiff's advice, Baylor's reliance upon it indicates that Baylor itself did not behave negligently. Indeed, seeking the advice of competent counsel before entering into the morass of employee benefits law would seem to be eminently reasonable behavior. *See, e.g., City of Muncie v. United Nat'l Ins. Co.*, 564 N.E.2d 979 (Ind.Ct. App.4th Dist.1991) (holding that action in reliance upon an attorney's advice was intentional not negligent).

**420**

damages for negligence, and these payments are not covered by Baylor's policy. The Eleventh Circuit has reached a similar result. In *Cincinnati Ins. Co. v. Metropolitan Properties*, 806 F.2d 1541, 1543 (11th Cir.1986), the court held that damages resulting from a breach of contract are not covered by a negligent-error policy. The court concluded that the word "negligent" as used in the policy must be given its legal meaning and is not synonymous with "carelessness or slack." *Id.* at 1544. As a result, even though the insured's actions in precipitating the breach may have been careless, they were not covered by the policy. *Id.* at 1543. The Eighth Circuit reached a similar result in *First S. Ins. Co. v. Jim Lynch Ent., Inc.*, 932 F.2d 717 (8th Cir.1991).[7]

■ We find this reasoning compelling. Under Baylor's logic, any default arising from a mistaken assumption regarding one's contractual liability could be transformed into an insured event. Indeed, refusing to pay a debt in reliance upon erroneous advice of counsel would convert a contractual debt into damage arising from a negligent omission. We dare not imagine the creative legal theories treading just short of malpractice and frivolity that could seek to transform contract obligations into insured events. There is a well-recognized line of demarcation between negligent acts and breaches of contract. Baylor's failure

to make payments to the Fund was a breach of contract but its insurance policy covered only negligent acts.[8] Federated is thus not obligated under the policy.[9]

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

RIPPLE, Circuit Judge concurring.

I concur in the result.

7. Baylor distinguishes *First Southern Insurance Co.* from our case by arguing that in that case the insured breached a contract with "full knowledge" of its contractual obligations whereas here Baylor's breach was based upon the mistaken belief that it had no further liability under the collective bargaining agreement. Appellant's Br. at 32. We find no such distinction. The Eighth Circuit stated: "After reviewing the traditional elements of negligence, the Eleventh Circuit [in *Cincinnati Insurance*] stated that 'if appellant has breached any duty, it is one created by contract, not by law.' We reach the same conclusion in the instant case." 932 F.2d at 720 (footnote and internal citation omitted). The court did not, as Baylor suggests, differentiate knowing from mistaken breaches of contract.

8. We agree with Baylor that a contract can create a duty the breach of which will sound in tort. *See, e.g., Plan–Tec, Inc. v. Wiggins,* 443 N.E.2d 1212 (Ind.Ct.App. 1st Dist.1983). But responsibility to make payments according to a contract is not the sort of duty that will support

an action in negligence. If it were, a breach of contract might be nothing more than a particularized form of negligence. If, for example, Baylor had negligently failed to enroll an employee in the pension plan and was subsequently sued by that employee for his pension benefits, there might be an argument that Baylor had suffered damage resulting from negligence. Similarly, in *Maryland Cas. Co. v. Economy Bookbinding Corp.,* 621 F.Supp. 410 (D.C.N.J. 1985), to which we have been referred by Baylor, the court held that the failure of pension fund trustees to detect embezzlement of fund assets was a negligent act covered by a policy similar to the one under consideration here. There again, liability attached not because of a failure to make fund contributions as required by contract, but because of a separate negligent act.

9. Because we have held that Federated has fulfilled its obligations under the policy, we need not address Baylor's request for attorney's fees.